A10A0627. PERKINS v. M&M OFFICE HOLDINGS, LLC.
(695 SE2d 82)

MILLER, Chief Judge.

M&M Office Holdings, LLC ("M&M") filed an action against Michael Perkins and his company, National Gunite & Construction Company ("National Gunite"), in the trial court, alleging that Perkins and National Gunite breached their contractual obligations and warranties with respect to completion of improvements to an office building M&M purchased from Perkins under a December 23, 1998 Agreement of Purchase and Sale (the "Agreement"). The trial court denied Perkins' second motion for summary judgment, which asserted that M&M's claims were time-barred, concluding that a series of amendments to the Agreement extending the closing date for the purchase transaction converted the Agreement into a contract under seal and the applicable 20-year statute of limitation under OCGA § 9-3-23 had not yet expired. This Court finds that the amendments to the Agreement did not place the Agreement under seal and that M&M's pending claims against Perkins are time-barred under the six year statute of limitation in OCGA § 9-3-24. Accordingly, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment

as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citations omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

So viewed, the record shows that, pursuant to the Agreement, Perkins agreed to sell M&M a commercial office building located at 2405 Satellite Boulevard in Duluth and to complete certain improvements to the building.[1] The Agreement concluded by stating: "IN WITNESS WHEREOF, the parties have set their hands and seals or caused duly authorized and incumbent officers to set their hands and affix the corporate seal the date set forth by such party's name." Perkins and M&M's manager, Jeffrey McCart, signed the Agreement, but neither Perkins nor McCart affixed a seal or wrote the word "Seal" by his signature. Perkins and McCart, on M&M's behalf, subsequently executed five amendments to the Agreement in order to extend the closing date for the purchase transaction. Each amendment concluded by stating: "IN WITNESS WHEREOF, the parties have executed this Amendment under seal on the day and year first above written," and "SEAL" was printed by the signatories' names. Perkins ultimately conveyed title to the building to M&M on November 24, 1999.

On March 5, 2007, M&M filed suit against Perkins and National Gunite, alleging that the defendants installed all of the building's windows backwards and upside down and asserting claims for breach of the Agreement, breach of a separate one-year repair warranty delivered by Perkins, and attorney fees and expenses pursuant to OCGA § 13-6-11. According to M&M's complaint, its action was timely under OCGA § 9-2-61 and renewed claims previously asserted in a prior action it commenced in Gwinnett County State Court but later voluntarily dismissed after the prior action was transferred to DeKalb County Superior Court. Perkins and National Gunite moved for summary judgment, asserting that M&M was not entitled to invoke the renewal statute because service of the complaint was never perfected in the prior action, and M&M's claims were barred by the six-year statute of limitation in OCGA § 9-3-24. After the trial court denied Perkins and National Gunite's motion, Perkins filed a second motion for summary judgment on statute of limitation grounds, further challenging the sufficiency of service in

---

[1] It is undisputed that the parties understood that Perkins would subcontract the construction work required under the Agreement to National Gunite.

the prior action.[2] In response to a request by the trial court for supplemental briefs, M&M submitted two supplemental briefs asserting that the amendments to the Agreement rendered the Agreement a contract under seal subject to the 20-year limitation period in OCGA § 9-3-23. M&M also filed an Amended Complaint dropping its claim for breach of Perkins' separate warranty and alleging that the "present case is an original action that stands independently of the previous action arising from the same set of facts" and was timely filed under OCGA § 9-3-23. The trial court denied Perkins' second motion for summary judgment, concluding that the amendments elevated the status of the Agreement to a contract under seal such that OCGA § 9-3-23 applied.

Perkins argues that the trial court erred in concluding that the subsequent amendments extending the closing date placed the Agreement under seal. We agree.

"The law is clear that to constitute a sealed instrument, there must be both a recital in the body of the instrument of an intention to use a seal *and* the affixing of the seal or scroll after the signature." (Punctuation omitted; emphasis supplied.) *McCalla v. Stuckey*, 233 Ga. App. 397, 398 (504 SE2d 269) (1998), citing *Chastain v. L. Moss Music Co.*, 83 Ga. App. 570 (64 SE2d 205) (1951). It is undisputed that when the Agreement was executed initially, it was not a contract under seal because, while it contained a recital of an intention to use a seal, the word "Seal" did not appear by either party's signature and a seal was not otherwise affixed to the instrument. *Koncul Enterprises v. Fleet Finance*, 279 Ga. App. 39, 41 (1) (a) (630 SE2d 567) (2006) (contract not under seal where it contained recital of intent to use seal but bore no seal). By contrast, the five subsequent amendments to the Agreement constitute contracts under seal because they contain the requisite recital and "SEAL" is printed by the parties' signatures. *Georgia Receivables v. Maddox*, 216 Ga. App. 164 (1) (454 SE2d 541) (1995).

In answering the dispositive question of whether the amendments altered the status of the initial Agreement and rendered it a contract under seal, we are guided by the applicable rules of contract construction. "The cardinal rule of construction is to ascertain the intent of the parties." (Citation omitted.) *DBL, Inc. v. Carson*, 284 Ga. App. 898, 904 (1) (c) (645 SE2d 56) (2007) (applying rules of contract construction to interpret lease and amendments). "Where the contract terms are clear and unambiguous, the court will look to that alone to find the true intent of the parties." (Citation omitted.) *Southern Fed. S & L Assn. &c. v. Lyle*, 249 Ga. 284, 287 (1) (290 SE2d

---

[2] National Gunite did not join in the second motion for summary judgment.

455) (1982). Unambiguous language "must be afforded its literal meaning and plain ordinary words given their usual significance. . . ." (Citations omitted.) *Wolverine Ins. Co. v. Jack Jordan, Inc.*, 213 Ga. 299, 302 (99 SE2d 95) (1957).

Significantly, each amendment indicates on its face that its purpose is confined to altering the closing date for the parties' transaction. The prefatory language in each amendment states that the parties "intend to extend the Closing Date as more particularly set forth herein," and Section 2 deletes the existing closing date and substitutes a new one in its place. The plain language of the amendments nowhere reflects an intent by the parties to convert their existing Agreement into a contract under seal. The trial court concluded otherwise, relying on Section 3 of the amendments, which provides: "Except as herein amended, the Agreement remains in full force and effect and Seller and Purchaser hereby ratify and confirm the Agreement as herein amended." The trial court found that this ratification clause "modifies the original contract to be under seal as well." We disagree.

To "ratify" means "[t]o approve and give formal sanction to; confirm." (The American Heritage College Dictionary (4th ed. 2004) at 1156; see also Black's Law Dictionary (8th ed.) at 1289 ("Ratification" denotes "[c]onfirmation and acceptance of a previous act, thereby making the act valid from the moment it was done.") To "confirm" means, among other things, "[t]o support or establish the certainty or validity of; verify." The American Heritage College Dictionary at 300; see also Black's Law Dictionary at 318 (definitions of "confirm" include "[t]o verify or corroborate"). Applying these definitions, we conclude that, by including a ratification clause in the amendments, M&M and Perkins simply acknowledged the continuing validity of their respective obligations in the Agreement, an instrument never placed under seal. The ratification clause is consistent with and confirms the general principle of contract law that a contract modification, such as the amendments, "introduces new elements into the details [of a contract], or cancels some of them, but leaves the general purpose and effect of the subject-matter of a contract intact.' " *Atlanta Integrity Mtg. v. Ben Hill United Methodist Church*, 286 Ga. App. 795, 799, n. 5 (650 SE2d 359) (2007), citing *Evans v. Henson*, 73 Ga. App. 494 (2) (37 SE2d 164) (1946). We see no basis to infer that the ratification clause was meant to elevate the status of the Agreement to a contract under seal. If the parties desired to alter the status of their Agreement in that manner, they could have expressly incorporated the prior Agreement by reference and stated their intention to place it under seal along with the amendments. On the face of the amendments as executed, we cannot

conclude that they converted the Agreement into a contract under seal.

Our decision in *Lumbermen's Mut. Cas. Co. v. Patillo Constr. Co.*, 172 Ga. App. 452 (323 SE2d 649) (1984) (physical precedent only), rev'd in part, 254 Ga. 461 (330 SE2d 344) (1985), upon which M&M relies, does not require a different result. *Patillo*, even if it were more than physical precedent, is distinguishable. In *Patillo*, Lumbermen's, as subrogee to its insured, sued Patillo for damages to a building Patillo constructed for the insured, asserting breach of contract and tort theories. Id. at 452. The original contract between Patillo and the insured was not under seal. Id. at 453 (1). A subsequent amendment to the contract contained a recital of intent to use a seal; however, the word "seal" was printed by the insured's name but not Patillo's. Id. Accordingly, we concluded that the parties' contract was not a sealed instrument as to Patillo, and the 20-year statute of limitation under OCGA § 9-3-23 was inapplicable. Id.[3] In *Patillo*, we had no cause to determine whether the language of the amendment at issue would permit us to conclude that the parties intended to elevate the status of their initial agreement. In the absence of the word "seal" by Patillo's signature, the amendment was not under seal as to Patillo, and, necessarily, could not convert the initial agreement into a contract under seal. We do not read *Patillo* as holding that in any case in which contracting parties enter into a sealed amendment to an unsealed agreement, the initial agreement becomes a sealed instrument as well. The language in the amendments here compels us to reach a contrary conclusion.

M&M never disputed Perkins' argument below that its claim for breach of the Agreement is governed by the general rule that a cause of action for breach of a construction contract accrues upon the project's substantial completion, which, in this case, was February 18, 2000, the date a final certificate of occupancy was issued. See *Bauer v. Weeks*, 267 Ga. App. 617, 618 (600 SE2d 700) (2004); *Gropper v. STO Corp.*, 250 Ga. App. 820, 823 (2) (552 SE2d 118) (2001). Given this accrual date, M&M's March 5, 2007 suit was not timely under the applicable six-year statute of limitation in OCGA § 9-3-24. Accordingly, the trial court should have granted Perkins' second motion for summary judgment.

---

[3] The Supreme Court of Georgia reversed our decision in *Patillo* insofar as it affirmed the grant of summary judgment in Patillo's favor on Lumbermen's tort claim for damages to the building based on negligent design and construction, holding the discovery rule applied to the statute of limitation in OCGA § 9-3-30 and issues of fact existed regarding the date the owner knew or should have known of Patillo's alleged negligence. *Patillo*, supra, 254 Ga. at 465. The Supreme Court later overruled its decision in *Patillo*. *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365 (368 SE2d 732) (1988).

For the reasons set forth above, the trial court's order denying Perkins' second motion for summary judgment is reversed.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED APRIL 15, 2010.

*Gray, Rust, St. Amand, Moffett & Brieske, Michael D. St. Amand, Marcus W. Wisehart, Johnson & Ward, Stanley E. Kreimer, Jr.,* for appellant.

*Leonard S. Goldstein,* for appellee.