A11A1487. THE ESTATE OF MACK PITTS et al. v. CITY OF ATLANTA et al.
(719 SE2d 7)

McFADDEN, Judge.

On June 14, 2007, Mack Pitts was killed while working on a construction project at the Atlanta Hartsfield-Jackson International

---

Airport, when he was struck by a vehicle driven by an employee of A&G Trucking, Inc. In an action separate from the present case, Pitts's estate through its administratrix and his minor children through their mothers (collectively, "the Estate") obtained a wrongful death judgment against A&G Trucking and its driver. That judgment exceeded the limits of A&G Trucking's automobile liability insurance coverage.

The Estate brought the present, separate action against the City of Atlanta ("the City") and various construction companies associated with the construction project. In the present action the Estate asserts that all of the defendants breached a contractual duty to require that A&G Trucking carry a minimum of $10 million in automobile liability insurance to work on the project. As to the City, the Estate also alleges breach of a ministerial duty to require A&G Trucking to carry insurance in that amount.

The parties filed cross-motions for summary judgment. The trial court denied summary judgment to the Estate and granted summary judgment to the City and the various construction company defendants on the ground that the Estate lacked standing to enforce the contractual minimum insurance requirement because Pitts had not been a third-party beneficiary to the contracts setting forth that requirement. (The court also ruled on motions for summary judgment related to claims between certain of the construction company defendants; those rulings are not at issue in this appeal.)

As detailed below, we find that the trial court erred in granting summary judgment to the defendants and denying summary judgment to the Estate on the breach of contract claim. First, we find that the Estate had standing to enforce the contracts' minimum insurance provision because Pitts was a third-party beneficiary to the contracts; and we find that, since the Workers' Compensation Act did not apply to the injury for which damages were sought in this action, the exclusive remedy provision did not bar it. Second, we find that under the unambiguous language of the contracts, A&G Trucking was a "subcontractor" required to have a minimum amount of insurance before working on the construction project, and that the undisputed evidence shows that the defendants breached their duty under the contracts by allowing A&G Trucking to work on the project without that minimum coverage. Finally, we find that the undisputed evidence shows that the Estate was harmed by the breach of contract, because A&G Trucking would have had enough insurance coverage to satisfy the Estate's judgment if the contract had been performed.

But we find that the trial court did not err in granting summary judgment to the City on the Estate's claim for breach of a separate ministerial duty. The Estate has pointed to no evidence that would

give rise to a private duty, independent of the contracts, under OCGA § 51-1-8.

Accordingly, we reverse the trial court's grant of summary judgment to the defendants and its denial of the Estate's motion for summary judgment on the claim for breach of contract, and we affirm the trial court's grant of summary judgment to the City on the claim for breach of a separate ministerial duty.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Hutto v. CACV of Colo.*, 308 Ga. App. 469 (707 SE2d 872) (2011). We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant. Id.

So viewed, the evidence showed that the City entered into a contract ("the Main Contract") with a joint venture comprised of defendants Holder Construction Company, Manhattan Construction Company, C. D. Moody Construction Company, Inc., and Hunt Construction Group, Inc. ("the General Contractor") regarding the construction project. The General Contractor entered into a contract ("the Subcontract") with a joint venture comprised of defendants Archer Western Contractors, Ltd. and Capital Contracting, Inc. ("the Subcontractor") to perform work on the project. Pitts was employed by the Subcontractor to work on the project. The Subcontractor contracted with A&G Trucking for trucking and hauling work on the project.

Pursuant to the Main Contract, the General Contractor would serve as construction manager for the construction of the Atlanta airport's Maynard Holbrook Jackson, Jr., International Terminal, identified in the Main Contract as the "project." The Main Contract authorized the General Contractor to enter into subcontracts with other entities. The General Contractor was obligated to require any subcontractors to be bound to it by the terms of the Main Contract and to assume to it all obligations and responsibilities which it assumed to the City under the Main Contract. The Main Contract also provided that, "[w]here appropriate, [the General Contractor] shall require each Subcontractor to enter into similar agreements with its Sub-Subcontractor."

The Main Contract specified that the General Contractor, its subcontractors, and its sub-subcontractors were named insureds under the City's "Owner's Controlled Insurance Program," which was made a part of the Main Contract. The stated purpose of the Owner's Controlled Insurance Program was "to provide one master insurance program that provides broad coverage with high limits that will benefit all participants involved in the project." The Main Contract required that the named insureds comply with all require-ments of the Owner's Controlled Insurance Program, which perti-

nently provided:

> Contractor shall, at its own expense, purchase and maintain
> . . . such insurance as will protect Contractor, Owner, Con-
> struction Manager, Design Consultant, and their Trustees,
> Directors, Officers, Partners, Agents, Representatives, and
> Employees from claims of the type set forth below: . . .
> Automobile, Bodily Injury and Property Damage Liability
> Insurance covering all automobiles, whether owned, non-
> owned, leased or hired, with not less than the following
> limits: . . . Bodily Injury - *$10,000,000* per person and occur-
> rence[.]

(Emphasis in original.)

Pursuant to the Subcontract, the Subcontractor agreed to be bound by the terms of the Main Contract, to assume toward the General Contractor all duties and obligations that the General Contractor owed the City under the Main Contract, and to bind all lower tier subcontractors to the obligations set forth in the Main Contract and the Subcontract. The Subcontract expressly required the Subcontractor to maintain automobile liability insurance coverage for "[o]wned, hired and non-owned vehicles with a $10,000,000 combined single limit for bodily injury and property damage."

1. The Estate contends that the trial court erred in granting summary judgment to the defendants and in denying the Estate's motion for summary judgment on its breach of contract claims. We agree, and accordingly we reverse the trial court's decision on the breach of contract claims.

"The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation omitted.) *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371 (1) (669 SE2d 179) (2008). The trial court found that the Estate could not show this third element of a breach of contract claim, on the ground that Pitts was not a third-party beneficiary to the contracts and thus the Estate lacked standing. We find, however, that the Estate's decedent, Pitts, was a third-party beneficiary of the contracts, thereby giving the Estate standing. Alternatively, the defendants contend that the Estate did not have the right to complain about a breach of contract because the exclusive remedy provision of the Workers' Compensation Act barred the claim, but we find that the exclusive remedy provision does not apply to the type of injury for which the Estate seeks damages in this case. As to the element of breach, the defendants contend that no breach occurred because A&G Trucking was a "supplier" under the contracts exempt from

the minimum insurance coverage requirement, rather than a "subcontractor," but we find that the unambiguous contract language shows otherwise. As to the element of damages resulting from the breach, the defendants present no argument; and we find that there is undisputed evidence of damages.

(a) *The Estate's Right to Complain.*

(i) *Standing.* The defendants argue, and the trial court determined, that the Estate lacked standing to enforce the minimum insurance provision because, as a matter of law, Pitts had not been a third-party beneficiary of the Main Contract or the Subcontract. We disagree.

"The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." OCGA § 9-2-20 (b). "For a third party . . . to have standing to enforce a contract, it must clearly appear from the contract that it was intended for the third party's benefit." (Citation and punctuation omitted.) *U.S. Foodservice v. Bartow County Bank*, 300 Ga. App. 519, 521 (1) (685 SE2d 777) (2009). "A contract is intended to benefit a third party when the promisor engages to the promisee to render some performance to a third person." (Citation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000).

Pitts was not specifically named as a beneficiary in either the Main Contract or the Subcontract, but that fact is not dispositive. *Marvel Enterprises v. World Wrestling Federation Entertainment*, 271 Ga. App. 607, 615 (5) (610 SE2d 583) (2005). When a "third-party beneficiary [is not] specifically named, the question is whether the parties' intention to benefit the third party is shown on the face of the contract." (Citation and punctuation omitted.) Id.

The cardinal rule of contract construction is to ascertain the intention of the parties. OCGA § 13-2-3. "Where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties. . . . The existence or nonexistence of ambiguity in a contract is a question of law for the court." (Citation omitted.) *Duke Galish, LLC v. Manton*, 308 Ga. App. 316, 318-319 (1) (707 SE2d 555) (2011).

The Owner's Controlled Insurance Program — a part of the Main Contract, which was in turn incorporated into the Subcontract — stated that its purpose was "to provide one master insurance program that provides broad coverages with high limits *that will benefit all participants involved in the project.*" (Emphasis supplied.) Thus, on its face the Owner's Controlled Insurance Program unambiguously stated the intent to benefit all *participants* in the construction project. None of the contracts define the term "participant," and the trial court held that the Estate had "presented no evidence that the [parties] understood the word 'participant' to include

specific workers on the site." But where the language of the contract is unambiguous, the contract provides the only evidence of the parties' intent. See *Duke Galish* at 318 (1). "Unambiguous language must be afforded its literal meaning and plain ordinary words given their usual significance." (Citation and punctuation omitted.) *Perkins v. M&M Office Holdings*, 303 Ga. App. 770, 773 (695 SE2d 82) (2010). The word "participant" means "one that participates," and "to participate" means "to take part" or "to have a part or share in something." Webster's New Collegiate Dictionary, p. 829 (1981). By working on the construction project as an employee of the Subcontractor, Pitts took part in the project and was a "participant" under the usual significance of that word.

The defendants argue that a later provision in the Owner's Controlled Insurance Program, which stated that "[t]he [Owner's Controlled Insurance Program] will be for the benefit of the [City] and Contractors and Subcontractors of all tiers," (emphasis omitted), restricted the intended beneficiaries to only those entities. But this language did not contain any express restriction, and to construe the contracts in a manner limiting the intended beneficiaries to only *some* participants in the construction project would render meaningless the earlier provision that the Owner's Controlled Insurance Program was to benefit *all* participants in the project. See *Kreimer v. Kreimer*, 274 Ga. 359, 361 (1) (552 SE2d 826) (2001) (courts should avoid whenever possible construction of contract that renders any portion of it meaningless).

The defendants also point to a provision for workers' compensation insurance in the Owner's Controlled Insurance Program as support for their assertion that individual workers could not have been intended third-party beneficiaries to the contracts. As the statement of intent reflects, however, the "purpose of the [Owner's Controlled Insurance Program] is to provide one master insurance program . . . that will benefit all participants involved in the project." Contrary to the defendants' contention, the inclusion of workers' compensation insurance in this master insurance program does not conflict with an intent that individual workers be third-party beneficiaries of it.

The defendants argue, and the trial court found, that the contracts did not demonstrate an intent to benefit third parties because they did not require any specific undertaking on the third parties' behalf. See *Gay v. Ga. Dept. of Corrections*, 270 Ga. App. 17, 23-24 (2) (606 SE2d 53) (2004) (involving contract containing party's "general promise to abide by state law in providing a safe workplace"). We disagree. The Main Contract set forth the responsibilities of the City and the General Contractor regarding establishing and maintaining the Owner's Controlled Insurance Program, and

the Subcontract contained provisions imposing those responsibilities upon the Subcontractor. These responsibilities included the duty to ensure that subcontractors of any tier complied with the minimum insurance requirements of the Owner's Controlled Insurance Program before working on the construction project. And as discussed above, the Owner's Controlled Insurance Program — which was expressly made a part of the Main Contract and consequently also incorporated into the Subcontract — provided that its purpose was to provide one master insurance program that provided coverage that benefitted all participants in the project. Thus, through the Main Contract and Subcontract the defendants promised to provide a specific benefit (ensuring the availability of minimum insurance coverage through the Owner's Controlled Insurance Program) to a limited group of intended beneficiaries ("all participants involved in the project"). We find this case analogous to *Plantation Pipe Line Co. v. 3-D Excavators*, 160 Ga. App. 756, 758-759 (287 SE2d 102) (1981), in which we held that a contract that afforded a benefit to a relatively small group of persons rendered those persons third-party beneficiaries.

The defendants argue that the parties nevertheless did not intend the contracts to benefit third parties, based on the following language in the Subcontract: "*No Third[-]Party Beneficiaries*. Nothing contained in this Subcontract is intended, nor shall be construed, to make any of SUBCONTRACTOR's lower tier sub-subcontractors or vendors third[-]party beneficiaries of this Subcontract." This language has no application to Pitts's status as a third-party beneficiary because Pitts was not a sub-subcontractor or vendor of the Subcontractor; rather, he was the Subcontractor's employee.

Finally, the defendants point to the general rule in Georgia that liability claimants are not regarded as third-party beneficiaries of insurance policies. See *Crisp Regional Hosp. v. Oliver*, 275 Ga. App. 578, 583 (4) (621 SE2d 554) (2005). But they have cited no authority for the proposition that this general rule applies where, as here, the contract contains specific language to the contrary. See generally *City of Atlanta v. Atlantic Realty Co.*, 205 Ga. App. 1, 6-7 (3) (421 SE2d 113) (1992) (plaintiff was a third-party beneficiary entitled to judgment as a matter of law on its claim that parties had breached a contract by failing to acquire and maintain insurance, where the contract specified that the insurance was to benefit the plaintiff).

(ii) *Exclusive remedy provision.* The defendants argue that the exclusive remedy provision of the Workers' Compensation Act bars the Estate from seeking damages for breach of the contracts. Under that provision, "[t]he rights and the remedies granted to an employee by [the Act] shall exclude all other rights and remedies of such

employee, his personal representative, parents, dependents, or next of kin, at common law or otherwise, on account of such injury, loss of service, or death." OCGA § 34-9-11 (a). But the Act "does not exclude redress in cases to which it is not applicable." (Citation and punctuation omitted.) *Doss v. Food Lion*, 267 Ga. 312, 313 (3) (477 SE2d 577) (1996). Thus, "the right to bring an ordinary action for damages is not excluded by the statute as to injuries which do not fall within its terms." (Citations and punctuation omitted.) *Bright v. Nimmo*, 253 Ga. 378, 379-380 (320 SE2d 365) (1984).

The Act's exclusive remedy provision did not prevent the Estate from securing a judgment in its separate, underlying action against A&G Trucking. That provision generally does not exclude claims against third parties. "[N]o employee shall be deprived of any right to bring an action against any third-party tort-feasor, other than an employee of the same employer or any person who, pursuant to a contract or agreement with an employer, provides workers' compensation benefits to an injured employee." OCGA § 34-9-11 (a). A&G Trucking was not an employee of Pitts's employer (the Subcontractor), nor was A&G Trucking a party to a contract under which it provided workers' compensation benefits to Pitts. Moreover, the Act expressly preserves certain remedies:

> When the injury or death for which compensation is payable under [the Act] is caused under circumstances creating a legal liability against some person other than the employer, the injured employee or those to whom such employee's right of action survives at law may pursue the remedy by proper action in a court of competent jurisdiction against such other persons, except as precluded by Code Section 34-9-11 or otherwise.

OCGA § 34-9-11.1 (a). A&G Trucking was not an "employer" of Pitts as that term is defined at OCGA § 34-9-8, which sets out the duties of statutory employers under the Act. Consequently, the Estate's claim against A&G Trucking is not among the rights and remedies excluded by OCGA § 34-9-11.

The injury for which the Estate seeks damages in this case is not a physical injury but instead is the loss of access to insurance coverage occasioned by the defendants' alleged breach of contract. The Estate has already obtained a judgment from A&G Trucking in their separate action against it for damages based on Pitts's death from the physical injuries he sustained. The defendants have pointed to no authority holding the Workers' Compensation Act to apply in an action for the type of injury at issue here, and we have found none. Moreover, in *Superb Carpet Mills v. Thomason*, 183 Ga. App.

554 (359 SE2d 370) (1987), we held that the definition of "injury" under the Workers' Compensation Act was synonymous with "personal injury," and that in cases where the Act was held to bar claims not based upon physical injury, it was because the Act provided a specific remedy for the damages sought. Id. at 555. Cf. *Crisp Regional Hosp.*, supra at 579-583 (1)-(4) (court did not consider whether Workers' Compensation Act barred employee's contract claim against employer hospital which had failed to purchase insurance for physician alleged to have negligently treated employee's on-the-job injury; in contrast, court *did* hold that Act barred employee's tort claims against employer).

The Estate's claim in this case seeks damages for breach of contract, not personal injury, and the Workers' Compensation Act provides no specific remedy for the damages sought by the Estate. See generally OCGA § 34-9-11.1. Accordingly, the Act is not applicable to the Estate's breach of contract action, and we find no merit in the defendants' contention that the Act's exclusive remedy provision bars the action.

(b) *Breach*. The Main Contract obligated the City to "maintain the required and necessary [Owner's Controlled Insurance Program] policies" and to "procure, pay for and administer the [Owner's Controlled Insurance Program]." It obligated the General Contractor and any subcontractors or sub-subcontractors to "comply with all requirements of the [Owner's Controlled Insurance Program]," and the General Contractor was prohibited under the Main Contract from commencing any work on the construction project or allowing any subcontractor or sub-subcontractor to commence work on the project until the requirements were met and approved by the City. The Subcontract obligated the Subcontractor to bind all lower-tier subcontractors to the obligations set forth in the Main Contract.

It is undisputed that A&G Trucking did not have the minimum automobile liability insurance of $10 million when it worked on the construction project. The defendants argue, however, that A&G Trucking was not subject to this minimum insurance requirement because it was not a "subcontractor" but merely a "supplier" under the Main Contract, which excluded suppliers from the Owner's Controlled Insurance Program requirements.

The Main Contract contained definitions of "supplier" and "subcontractor" that were incorporated by the Subcontract and thus were applicable to A&G Trucking. The Main Contract defined "supplier" as a person or organization contracted "to supply materials or equipment needed for the completion of the [construction]." Under the terms of its contract with the Subcontractor, however, A&G Trucking agreed to do more than simply supply materials and equipment to the construction site; it contracted to "provide and

furnish *all labor*, materials, tools, supplies, equipment, *services*, facilities, *supervision*, and *administration* necessary or incidental to properly complete performance . . . of the following work: Trucking and Aggregate Hauling." (Emphasis supplied.) Rather than a "supplier," A&G Trucking fell within the Main Contract's definition of "subcontractor": a person or organization contracted "to perform any of the [construction] at the site." Although the defendants point to evidence extrinsic to the contracts to argue that the minimum insurance requirements nevertheless did not apply to A&G Trucking, such evidence cannot be used to vary the unambiguous terms of the contracts. *Simpson v. Pendergast*, 290 Ga. App. 293, 296 (1) (659 SE2d 716) (2008).

Accordingly, the undisputed evidence shows that the defendants breached their contractual duties regarding the Owner's Controlled Insurance Program by allowing A&G Trucking to work on the construction project without the required minimum insurance coverage.

(c) *Resultant Damages.* The defendants do not contest that, had A&G Trucking been required to obtain $10 million in automobile liability insurance coverage before working on the construction project, it would have had enough insurance to satisfy the Estate's judgment against it. The undisputed evidence shows that the Estate was harmed by the defendants' breach of contract. See OCGA § 13-6-2 ("Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach."); *Wilks v. Overall Constr.*, 296 Ga. App. 410, 413 (1), n. 7 (674 SE2d 320) (2009) (measure of damages for breach of contract is amount that will compensate injured person for loss which fulfillment of contract would have prevented, such that injured person is placed, so far as is possible, in position he would have been in had contract been performed).

2. The Estate asserted a separate claim against the City for breach of a duty to ensure all contractors and subcontractors maintained the amounts of insurance required by the Owner's Controlled Insurance Program. The only source for this duty cited by the Estate in its appellate brief is OCGA § 51-1-8, which pertinently provides that "[p]rivate duties may arise from . . . relations created by contract, express or implied." But not all breaches of contract are also independent torts. See *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973). A private duty arising from a contractual relationship under OCGA § 51-1-8 must exist independent of the contract. See *Brookview Holdings v. Suarez*, 285 Ga. App. 90, 94 (1) (645 SE2d 559) (2007). "[A]bsent a legal duty beyond the contract, no action in tort may lie upon an alleged breach of a

contractual duty." (Citation, punctuation and footnote omitted.) *Fielbon Dev. Co. v. Colony Bank*, 290 Ga. App. 847, 855 (3) (660 SE2d 801) (2008). The Estate has pointed to no evidence that the City owed Pitts any duty independent of the contracts. And because there is no evidence that an independent duty existed, we do not reach the Estate's contention that the independent duty was ministerial rather than discretionary in nature.

The trial court did not err in granting summary judgment to the City on this claim.

*Judgment affirmed in part and reversed in part. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 5, 2011 —
RECONSIDERATIONS DENIED NOVEMBER 16, 2011 —

*Butler, Wooten & Fryhofer, James E. Butler, Jr., Joel O. Wooten, Jr., Matthew E. Cook, Alan J. Hamilton, Lawson, Davis, Pickren & Seydel, James P. Sneed*, for appellants.

*Swift, Currie, McGhee & Hiers, Stephen M. Schatz, Steven J. DeFrank, Hall, Booth, Smith & Slover, James H. Fisher II, Denise W. Spitalnick, Kawania B. James, Casey Gilson, Robert P. White, Carlton Fields, Walter H. Bush, Jr., Christopher B. Freeman*, for appellees.