[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15063
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-03817-MLB

HOLIDAY HOSPITALITY FRANCHISING, LLC,

Plaintiff – Appellee,

versus

OAKBROOK REALTY AND INVESTMENTS, LLC,
DONNA KRILICH,

Defendants – Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(May 29, 2020)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Oakbrook Realty and Investments, LLC and Donna Krilich appeal the grant of summary judgment in favor of Holiday Hospitality Franchising, LLC, in a suit arising out of a hotel construction/operation transaction gone awry. Holiday Hospitality obtained summary judgment on its claims for repayment of a Promissory Note and for breach of the License between the parties. Oakbrook and Ms. Krilich contend on appeal that the claim on the promissory note was time barred. They also argue that there are material issues of fact concerning the alleged breach of the License and that the liquidated damages claim was not sufficiently supported by evidence. Upon review of the applicable law and the record, we affirm in part and reverse in part.

## I

Holiday Hospitality, successor in interest to Holiday Hospitality Franchising, Inc., develops and operates a system of hotel management and operation services under certain well-known brands, including the Crowne Plaza Hotel brand. Holiday Hospitality licenses the system and associated trademarks with licensees in exchange for the payment of royalties and other fees.

In 2009, Oakbrook approached Holiday Hospitality about a licensing opportunity for a new hotel that it was planning to build in Oakbrook, Illinois. On

2

September 30, 2009, the parties entered into a written license agreement to use the system for the new hotel, which would be operated under the Crowne Plaza brand.

The License authorized Oakbrook to use Holiday Hospitality's system and associated trademarks for 20 years from the date of the hotel's opening. It required Oakbrook to obtain any permits and approvals required for construction of the hotel and established a timeline for construction under which Oakbrook would (1) submit preliminary plans to Holiday Hospitality by February 1, 2011, (2) submit final plans to Holiday Hospitality by May 1, 2011, (3) begin construction by September 1, 2011, and (4) complete construction by March 1, 2013. Holiday Hospitality could terminate the License before the 20-year period if Oakbrook defaulted on any of its contractual obligations.

In the event that Holiday Hospitality terminated the License for such a breach, the License provided that Oakbrook would owe Holiday Hospitality liquidated damages calculated using a formula based on gross room revenue and royalties that Holiday Hospitality would have expected to receive under the License. The parties "acknowledge[d] and agree[d] that it would be difficult to determine the injury caused to [Holiday Hospitality] by termination of this License" and so they "intend[ed] the . . . liquidated damages calculation to be a reasonable pre-estimate of [Holiday Hospitality's] probable loss and not as a penalty or in lieu of any other payment." D.E. 24-1 at 25 (License § 14I).

The same day they signed the License, Oakbrook borrowed $25,000 from Holiday Hospitality, memorialized by a Promissory Note with a maturity date of March 1, 2010.  Oakbrook's president, Donna Krilich, executed the Note both on behalf of Oakbrook as Maker and in her own personal capacity as Co-Maker. Oakbrook and Ms. Krilich failed to pay by the Note by the maturity date.

Oakbrook also failed to submit the preliminary and final plans for the hotel's construction by the dates specified in the License.  Shortly after the May 1, 2011 deadline for submitting final plans, Holiday Hospitality sent an email to Oakbrook to "get an update on the status of the project" and figure out "if there is any chance that [the] project is not moving forward" in light of a new business opportunity that had emerged for Holiday Hospitality.  D.E. 33-1 at 12 (Declaration of Kim M. Plencner, Ex. A).  Oakbrook claims that it subsequently obtained extensions on the License deadlines, but does not cite any record evidence to support that claim.  So, after sending multiple letters notifying Oakbrook of the default, Holiday Hospitality terminated the License on February 13, 2012.  Holiday Hospitality demanded payment of the Note and $961,706.48 in liquidated damages.  But Oakbrook and Ms. Krilich did not pay.

Holiday Hospitality filed an action against Oakbrook and Ms. Krilich in state court for breach of the License and default on the Note, among other claims.  After the case was removed to federal court, Holiday Hospitality filed its motion for

summary judgment, which the district court granted. The district court ruled that Holiday Hospitality was entitled to payment and interest on the Note because the Note was valid and enforceable and, as an instrument under seal, it had a 20-year statute of limitations within which Holiday Hospitality could sue. The district court also concluded that Oakbrook had breached the License and was entitled to its requested liquidated damages. Finally, the district court held that Ms. Krilich was liable to Holiday Hospitality for all the amounts Oakbrook owed and that Holiday Hospitality was entitled to attorney's fees.

## II

We review a grant of summary judgment *de novo*, viewing all the facts and making all reasonable inferences in the light most favorable to the nonmoving party. *See Jurich v. Compass Marine, Inc.*, 764 F.3d 1302, 1304 (11th Cir. 2014) (citation omitted). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, a court considers all record evidence, "including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

## III

Oakbrook and Ms. Krilich argue that Holiday Hospitality's claim under the Note is barred as untimely and contend that there are issues of material fact regarding

5

Holiday Hospitality's claim for liquidated damages which preclude summary judgment. For the reasons that follow, we conclude that the Note is time barred as to Oakbrook but not as to Ms. Krilich. On Holiday Hospitality's liquidated damages claim, we agree with the district court that there are no issues of fact and therefore affirm the grant of summary judgment.

## A

Georgia provides a six-year statute of limitation for breach of contract claims. *See* O.C.G.A. § 9-3-24. Claims upon contracts under seal, however, are governed by a 20-year statute of limitations. *See* O.C.G.A. § 9-3-23. "[T]o constitute a sealed instrument, there must be both a recital in the body of the instrument of an intention to use a seal and the affixing of the seal or scroll after the signature." *Perkins v. M & M Office Holdings, LLC*, 695 S.E.2d 82, 84 (Ga. Ct. App. 2010) (citation and emphasis omitted). The word "seal" printed under the parties' signatures suffices in lieu of an affixed seal or scroll. *See id.* (noting that five amendments to an agreement constituted contracts under seal because they contained the requisite recitals and "SEAL" was printed by the parties' signatures) (citation omitted). Similarly, the words "Legal Signature" or the shorthand notation of "L.S." can qualify as a seal or scroll. *See Brown v. Cooper*, 514 S.E.2d 857, 861 (Ga. Ct. App. 1999) ("The [Georgia] Supreme Court has held that the combination of the words 'Witness my

hand and seal' in the body of the note and the letters 'L.S.' following the maker's signature renders the note a sealed instrument.") (citation omitted).

The Note came due on and was not paid by March 1, 2010, and Holiday Hospitality filed its complaint on September 15, 2016. Because Holiday Hospitality took more than six years to file its complaint, its claim is time barred if the Note is a simple contract and not an instrument under seal.

The Note contains the requisite recital of the intent to use a seal, stating before the signature lines that "IN WITNESS HEREOF, Maker has executed this Note under Seal as of the date first above written." D.E. 24-2 at 3 (Promissory Note). Immediately below this language, under the word "MAKER," Ms. Krilich signed on behalf of Oakbrook. *See id.* To the left of her signature on behalf of Oakbrook is a signature on a line titled "Corporate Secretary or Notary with Seal." *Id.* Below her signature for Oakbrook as "MAKER," Ms. Krilich also signed in her own capacity as "CO-MAKER." *Id.* Her name and the words "Legal Signature" are printed immediately under this signature. *Id.*

The defendants acknowledge that the Note contains a recital as to Oakbrook, but dispute that the "Corporate Secretary or Notary with Seal" language constitutes the seal or scroll required by Georgia law. As to Ms. Krilich, the defendants argue that the words "Legal Signature" under her

signature as Co-Maker do not render the Note under seal as to her because the Note only contains a recital as to the "Maker."

Georgia law provides that when a promissory note states that it is given under seal and the word "seal" appears after the signature of a debtor, the note is a contract under seal. *See Bryant v. Optima Int'l, Inc.*, 792 S.E.2d 489, 494 (Ga. Ct. App. 2016) (citation omitted). The Note states that the Maker intends to execute it under seal, but here, the word "seal" does not appear immediately under or after Ms. Krilich's signature as Oakbrook's representative; rather it appears by the signature of the corporate secretary or notary attesting to her signature on behalf of Oakbrook. Georgia courts have declined to attribute to a maker the word "seal," "sealed" or similar language "where it was intended to be the expression of whatever witnesses might attest the paper." *Echols v. Phillips*, 37 S.E. 977, 977 (Ga. 1901) (determining that the words "signed, sealed, and delivered in the presence of," written above the portion of the note where witnesses ordinarily attest, absent any language showing the maker intended to use the words as his own, did not render the note a sealed instrument); *Johnson v. Int'l Agr. Corp.*, 154 S.E. 465, 465 (Ga. Ct. App. 1930) (distinguishing notes that contain the phrase "signed, sealed, and delivered in the presence of," located above the space for witnessing, and concluding that a note was a sealed instrument because the maker's signature was immediately preceded by the

8

words, "Given under the hand and seal of each party," and was immediately followed by the word "Seal").

While there is a recital in the body of the Note demonstrating an intention to use a seal, because there is no affixed seal or use of the word "seal" after Ms. Krilich's signature for Oakbrook, the Note is missing one of the two necessary elements to make it an instrument under seal as to Oakbrook. *See Perkins*, 695 S.E.2d at 84. Holiday Hospitality's claim as to Oakbrook is therefore time barred.

Contracts may be under seal as to one party and not the other, however, *see McCalla v. Stuckey*, 504 S.E.2d 269, 270 (Ga. Ct. App. 1998), and that is the situation before us here. Although we determine that the Note is not under seal as to Oakbrook, we conclude that it is under seal as to Ms. Krilich as Co-Maker.

The words "Legal Signature" appear immediately under Ms. Krilich's Co-Maker signature. The defendants point out that recitation of the parties' intent to execute the instrument under seal refers only to the "Maker." Where a recitation in the body of a contract indicates that the intent to file under seal applies to only one party, a court will not ignore express contract language to find that the instrument is under seal as to both parties. *See Marshall v. Walker*, 178 S.E. 760, 760 (Ga. Ct. App. 1935) (holding that an instrument that contained recitation that it was under seal only as to the "party of the first part" was an instrument under seal as to that party but was a simple contract as to "the party of the second part"). Here the express

contract language indicates that the word "Maker" can refer to both Oakbrook and Ms. Krilich.

The Note states that if "more than one person, firm[,] or entity is a Maker hereunder, then all references to 'Maker' shall be deemed to refer equally to each of said persons, firms, entities, all of whom shall be jointly and severally liable for all of the obligations of Maker hereunder."  D.E. 24-2 at 3.  Despite the fact that the Note defines Oakbrook as "Maker" and Ms. Krilich as "Co-Maker," its language supports the reading that both are makers and both are jointly and severally liable under the Note.  For instance, although the Note refers throughout to the Maker's actions, from the opening line *both* Oakbrook and Ms. Krilich "promise to pay" Holiday Hospitality the principal sum of $25,000.  Because the reference to "Maker" in the recitation applies to Ms. Krilich, and her signature is closely followed by the words "Legal Signature," we conclude that the Note is under seal as to her, and that Holiday Hospitality's claim under the Note is not time barred as to her.

## B

The defendants next argue that there are genuine issues of material fact about whether the parties mutually departed from the terms of the License such that Oakbrook was not in breach.  Oakbrook contends that, even if liquidated damages are proper, Holiday Hospitality failed to adequately support its liquidated damages amount.

10

Oakbrook conceded that it did not submit the necessary plans or complete construction of the hotel as contemplated in the License.  It nevertheless argued that a series of emails and letters between the parties established their mutual agreement to depart from the License.  *See* D.E. 33-1 (exhibits containing May 3, 2011 Holiday Hospitality email, October 20, 2011 Oakbrook letter, and July 5, 2012 Oakbrook letter).  Upon review of the License and the referenced correspondence, we agree with the district court that there is no conflicting evidence and no fact issue as to Oakbrook's breach or the liquidated damages calculation.

First, the License specifically requires that any modification must be in writing and signed by the parties.  *See* D.E. 24-11 at 23 (§ 14.D) ("No change in this License will be valid unless in writing signed by both parties.").  That requirement is enforceable under Georgia law, *see Gerdes v. Russell Rowe Communications, Inc.*, 502 S.E.2d 352, 354 (Ga. Ct. App. 1996) (citation omitted), and Oakbrook points to no executed writing that complies with the License requirement and purports to memorialize any new agreement to modify the License terms.

Second, although waiver of a contract's written modification requirement can be established through the parties' course of conduct, *see id.* (citation omitted), the defendants have not submitted evidence that creates a fact question as to this issue. The correspondence that they present as evidence of mutual departure does not demonstrate the parties' mutual intent to change the License terms.  The May 3,

11

2011, Holiday Hospitality email merely asked for a status update on the project. Oakbrook's October 20, 2011, letter stated that Oakbrook "could proceed expediently" if Holiday Hospitality could give it "some assistance in equity, a joint venture partner or . . . client who could work with us on a creative deal." D.E. 33-1 at 5. That same letter stated Oakbrook would appreciate "any consideration you could give us as to an extension so [as] not to cancel our licensing." *Id.* at 6. Finally, Oakbrook's July 5, 2012, letter, a response to Holiday Hospitality's final demand letter, merely disputed Holiday Hospitality's right to liquidated damages and claimed that, through prior meetings and discussions, Holiday Hospitality knew Oakbrook was not going to build the hotel as contemplated by the License.

Even construing these messages in the light most favorable to Oakbrook and Ms. Krilich, they do not permit a reasonable jury to conclude that the parties intended to depart from the License terms. At best they show that Oakbrook desired a modification of the License, and a one-sided intent to change contract terms is not enough to show *mutual* intent to depart from a contract. *See Chastain v. Spectrum Stores, Inc.*, 418 S.E.2d 420, 422 (Ga. Ct. App. 1992) ("The mere fact that one party so intended [to waive a distinct stipulation in a contract] would not bring about this result. It must appear that it was the mutual intention[.]") (citation omitted). The district court was therefore correct to enter summary judgment in favor of Holiday Hospitality.

12

The district court was also right to hold that Holiday Hospitality had adequately supported its claim for liquidated damages. A contract's liquidated damages provision is enforceable under Georgia law if "(1) the injury caused by the breach is difficult or impossible to estimate accurately; (2) the parties intended to provide for damages rather than a penalty; and (3) the sum stipulated is a reasonable pre-estimate of the probable loss." *Mariner Health Care Mgt. v. Sovereign*, 703 S.E.2d 687, 689 (Ga. Ct. App. 2010) (citation omitted).

Oakbrook and Ms. Krilich do not dispute the first two factors or the propriety of the liquidated damages formula in the License. Rather, they argue that there was insufficient evidentiary basis for the $65.42 amount of "average daily revenue per available room"—one of the variables that must be plugged into the License's formula to yield the liquidated damages figure.

Oakbrook and Ms. Krilich do not appear to have disputed this number when Holiday Hospitality initially provided it in its August 7, 2013, letter attempting to collect the outstanding amounts purportedly due under the License. They nevertheless fault Holiday Hospitality for failing to append to its summary judgment motion a spreadsheet of data collected from its system showing how it arrived at the $65.42 figure.

While a spreadsheet or similar documentation would have been thorough, it was not required to show the reasonableness of the liquidated damages calculation

13

on summary judgment. Holiday Hospitality submitted letters in support of its motion for summary judgment that identified the $65.42 figure as the "average daily revenue per available room." It also submitted a declaration in support of summary judgment in which its Vice President of Franchise Licensing and Compliance explained how the $65.42 figure was calculated and stated that she had personal knowledge of the facts in her declaration. *See* D.E. 24-10 at ¶¶ 2, 62–63. Specifically, she explained that where, as here, there was no available data for a hotel, Holiday Hospitality and its licensees use a formula that yields a liquidated damages figure "based on the average daily revenue per available room for all hotels in the System for the previous (12) months." *Id.* at ¶¶ 62–63. An affidavit that is made on personal knowledge, sets out facts that would be admissible in evidence, and shows that the declarant is competent to testify on the topic need not attach documentary support to serve as acceptable evidence on summary judgment. *See* Fed. R. Civ. P. 56(c)(4) (setting out requirements for affidavits or declarations). *Cf. United States v. Stein*, 881 F.3d 853, 854 (11th Cir. 2018) (en banc) ("[A]n affidavit which satisfies Rule 56 of the Federal Rules of Civil Procedure may create an issue of material fact and preclude summary judgment even if it is self-serving and uncorroborated.").

Given Holiday Hospitality's declaration, its letters supplying the formula variables, and the lack of contrary evidence from Oakbrook and Ms. Krilich, we

14

conclude that the district court's award of liquidated damages was proper and is due to be affirmed.

## IV

The district court held that the Promissory Note between Holiday Hospitality on one side and Oakbrook and Ms. Krilich on the other was an instrument under seal as to both Oakbrook and Ms. Krilich.  We must reverse this ruling in part because the two requirements to convert a simple contract to an instrument under seal in Georgia—a recital of an intent to use a seal in the body of the instrument and the affixing of the seal after the signature—were met only with respect to Ms. Krilich and not with respect to Oakbrook.  We affirm the district court's ruling on the breach of contract claim seeking liquidated damages.  The case is remanded for the district court to enter an amended judgment.

**AFFIRMED IN PART AND REVERSED IN PART.**