**THIRD DIVISION
DOYLE, P. J.,
REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**November 29, 2022**

# In the Court of Appeals of Georgia

A22A1197. WHITE PROPERTIES INVESTMENTS, LLC v. DIP
    LENDING I, LLC.

PHIPPS, Senior Appellate Judge.

This is a quiet title dispute over which party rightfully owns a piece of property in East Point—DIP Lending I, LLC, which claims it acquired title by foreclosing on a security deed assigned to it by the Federal Deposit Insurance Corporation ("FDIC"); or White Properties Investments, LLC, which claims it redeemed the property after a tax sale. The trial court adopted a special master report finding in favor of DIP, and White Properties appeals. Because DIP's security deed reverted back to the grantor before DIP foreclosed, we reverse.

The relevant facts are undisputed. In May 2009, ATA Properties, Inc., acquired the property at 2879 Harlan Drive by limited warranty deed. In June 2009, ATA

borrowed $50,000 from The Blackstone Equities Group, Inc., using the property as collateral, and executed a purchase money security deed in favor of Blackstone. The security deed reflected a maturity date of July 1, 2010, and was signed by ATA's president, Tony White, under seal. Shortly thereafter, Blackstone assigned its interest in the security deed to Rockbridge Commercial Bank. In December 2009, Rockbridge failed, and the FDIC was appointed as its receiver. In early 2015, the FDIC assigned the security deed to DIP.

Meanwhile, in May 2010, ATA transferred the property to Harlan Dr, LLC, which—according to DIP—was owned by Tony White. Property taxes went unpaid, and the local government recorded multiple tax liens on the property from 2009 to 2012. In May 2014, the Fulton County Sheriff conducted a tax sale of the property to satisfy the tax liens. Cleveland Avenue Properties, LLC, another entity affiliated with Tony White, was the highest bidder, at $31,000, and received a tax deed to the property. In June 2014, Cleveland Avenue Properties, LLC executed a redemption quitclaim deed conveying its interest in the property back to Harlan Dr, LLC. The deed indicated that White Properties had paid the redemption amount.

In August 2014, White Properties brought an action in Fulton County Superior Court seeking judicial foreclosure and to quiet title to the property. The trial court in

2

that case ruled that the tax sale was void under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 USC § 1825 (b), because the FDIC had not given written consent to the sale. Accordingly, the court granted summary judgment in favor of DIP. White Properties appealed, but we affirmed the trial court in an unpublished opinion. *White Properties Investments, LLC v. City of East Point*, 348 Ga. App. XXIII (Case No. A18A1603) (Jan. 28, 2019) (unpublished).

In 2015, DIP sued Tony White, White Properties, and others for breach of contract and other claims arising from the defendants' alleged failure to repay the 2008 secured loan at issue in this case, as well as multiple other loans. The complaint asserted claims for judicial foreclosure and to quiet title to the property at issue here.[1] In March 2019, however, DIP dismissed that case without prejudice. Thereafter, in April 2019, DIP proceeded with non-judicial foreclosure by exercising the power of sale in the 2009 security deed and purchasing the property at the sale.

In May 2020, DIP brought this action against White Properties, Fulton County, and others, seeking to quiet title to the property. DIP alleged that "White Properties'

---

[1] White Properties and other defendants moved to dismiss some of the claims, but the trial court denied their motion. Those defendants filed a direct appeal to this Court, which we dismissed as premature. *White Properties Investments, LLC v. DIP Lending I, LLC*, Case No. A19A1010 (dismissed Jan. 24, 2019).

3

redemption of the Property was void and the Redemption Quitclaim Deed . . . was void" and that, instead, DIP was the rightful owner pursuant to its foreclosure of the security deed. The trial court appointed a special master to hear the petition. In pre-hearing briefing, White Properties argued, among other things, that DIP's security deed was no longer enforceable at the time of the foreclosure because it had reverted back to the grantor under OCGA § 44-14-80.

Following a hearing, the special master filed a report and recommendation concluding that the 2014 tax sale was void and that DIP obtained fee simple title to the property through its April 2019 foreclosure, subject to various tax liens. The special master rejected White Properties's argument that the security deed had reverted back to the grantor. The special master recommended that the trial court enter a judgment declaring, in relevant part, that DIP owned the property in fee simple and that the redemption quitclaim deed was void. The special master also recommended, as a matter of equity, that DIP be ordered to reimburse White Properties for the tax liens it paid off in connection with the tax sale. The trial court adopted the findings of the special master and entered judgment in accordance with the recommendations. White Properties appeals.

4

1. White Properties argues that DIP's foreclosure of the security deed was invalid because, under OCGA § 44-14-80 (a) (1)'s seven-year reversionary period, the deed reverted back to the grantor before the foreclosure. The special master disagreed, finding that OCGA § 9-3-23's 20-year statute of limitation for actions on sealed instruments controlled over OCGA § 44-14-80 (a) (1)'s shorter reversionary period. White Properties contends that in reaching this interpretation, the special master overlooked the principle that a specific statute controls over a more general one. See, e.g., *Moosa Co., LLC v. Commr. of Ga. Dept. of Revenue*, 353 Ga. App. 429, 432 (838 SE2d 108) (2020) ("for purposes of statutory interpretation, a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent in the relevant statutory text") (citation and punctuation omitted). DIP maintains that White Properties waived its statutory specificity argument by not raising it in a timely fashion below, but DIP does not challenge the merits of the argument. Applying de novo review,[2] we conclude that the special master's analysis

---

[2] "Once the trial court adopts the special master's findings and enters judgment, the court's decision is upheld by the appellate court unless clearly erroneous but conclusions of law are reviewed de novo." *Freeport Title & Guar. v. Tegeue*, 360 Ga. App. 18, 20 (858 SE2d 554) (2021) (citation and punctuation omitted).

was erroneous for a different reason—because the reversionary statute has a different function than, and is unaffected by, statutes of limitation.

OCGA § 9-3-23 provides that "[a]ctions upon bonds or other instruments under seal shall be brought within 20 years after the right of action has accrued. No instrument shall be considered under seal unless so recited in the body of the instrument." Here, the security deed recited that it "has been duly executed and sealed by Grantor," and the word "Seal" appears after the signature of the grantor's president. Thus, the security deed is a sealed instrument for the purpose of OCGA § 9-3-23. See *Perkins v. M & M Office Holdings, LLC*, 303 Ga. App. 770, 772 (695 SE2d 82) (2010) (contractual amendments were sealed instruments "because they contain[ed] the requisite recital and 'SEAL' [was] printed by the parties' signatures"). The deed was executed on June 19, 2009. Accordingly, if OCGA § 9-3-23 governs, then the statute of limitation will not run until sometime after June 19, 2029.

Georgia's security deed reversion statute, OCGA § 44-14-80, provides a "default reversionary period for real property conveyed to secure debt [of] seven years from the debt's maturity date[.]" *Griggs v. Miller*, 363 Ga. App. 82, 85 (2) (870 SE2d 578) (2022) (citation and punctuation omitted). Specifically,

[t]itle to real property conveyed to secure a debt or debts shall revert to the grantor or his or her heirs, personal representatives, successors, and assigns at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance[.]

OCGA § 44-14-80 (a) (1). Foreclosure on the property by an action or exercise of the power of sale will prevent the reversion "if started prior to reversion of title" and "completed without delay chargeable to the grantee or the grantee's . . . assigns." OCGA § 44-14-80 (a) (3). After title reverts to the grantor, however,

[n]o action to foreclose and no action to recover property under a conveyance of real property to secure debt shall be commenced and no power contained in or conferred by a conveyance of real property to secure debt shall be exercised.

OCGA § 44-14-83. See also *Bell v. Freeport Title & Guar.*, 355 Ga. App. 94, 98 (2) (a) (842 SE2d 565) (2020) ("if title has reverted to the grantor under [OCGA § 44-14-80 (a) (1)], all actions to foreclose upon and to recover the property are barred") (citation and punctuation omitted). The security deed at issue here had a maturity date of July 1, 2010. Thus, if OCGA § 44-14-80 (a) (1) governs, the security deed reverted to the grantor on July 1, 2017, seven years after the maturity date and nearly two years *before* DIP foreclosed on the deed.

7

The special master found, and our research has yielded, no authority directly addressing the relationship between OCGA §§ 9-3-23 and 44-14-80 (a) (1). Nevertheless, the special master concluded that the former controls over the latter in this case, giving DIP a 20-year time limit to exercise its rights under the security deed. The special master noted that while the statutory forerunner of OCGA § 9-3-23 dates back to the 1800s, OCGA § 44-14-80's predecessor was enacted more recently, in the 1940s. See *Williams v. O'Connor*, 208 Ga. 39, 40 (1) (64 SE2d 890) (1951) (discussing predecessor of OCGA § 44-14-80); *Milledge v. Gardner*, 29 Ga. 700, 703-704 (1860) (discussing predecessor of OCGA § 9-3-23). Relying on the presumption that the legislature enacts statutes with full knowledge of existing law, such that newer statutes must be construed in harmony with existing law, see, e.g., *In re: Declaration of Judicial Emergency*, 358 Ga. App. 48, 52 (1) (853 SE2d 366) (2020), the special master reasoned:

> The reversion statute being silent as to its effect on deeds under seal, the two statutes must be read in harmony, with the effect of the reversion statute not canceling out the twenty-year statute of limitation applicable to instruments under seal.

The special master also found that equity favored this result, as DIP was not entirely to blame for its delay in foreclosing on the property. Rather, the FDIC held the

8

property as a receiver for many years, and the property has been tangled in litigation for quite some time.

In seeking to harmonize the two code sections at issue here, the special master essentially concluded that the newer reversion statute must yield to the older limitation statute. But the two statutes have different functions. A statute of limitation, such as OCGA § 9-3-23, is "a rule limiting the time in which a party may bring an action for a right which has already accrued." *Dept. of Pub. Safety v. Ragsdale*, 308 Ga. 210, 212 (839 SE2d 541) (2020) (citation and punctuation omitted). OCGA § 44-14-80 (a) is not a statute of limitation. *Griggs*, 363 Ga. App. at 88 (3). Rather, "it establishes a time period after which title to real property conveyed by a security deed that has not been cancelled or foreclosed upon reverts to the grantor as a matter of law." Id. (citation and punctuation omitted). See also *Matson v. Bayview Loan Servicing, LLC*, 339 Ga. App. 890, 891 (1) (795 SE2d 195) (2016) (OCGA § 44-14-80 "provide[s] for an *automatic* reverter of title to land described in a security deed") (citation and punctuation omitted; emphasis supplied).

We have held that OCGA § 44-14-80 (a)'s automatic reversion is not affected by laws that toll statutes of limitation. In *Griggs*, 363 Ga. App. 82, the holder of a security deed sought to foreclose on property more than seven years after the deed's

9

fixed maturity date. Id. at 84-85 (1). The deed holder argued that the reversion period was tolled by various events, including the property owner's stint of active military service. Id. at 85 (1), 88-89 (3). We disagreed, holding that "[b]ecause the reversionary period is not a statute of limitation, statutory tolling provisions applicable to statutes of limitation . . . do not toll the reversionary period." Id. at 88 (3). See also *Newman v. Newman*, 234 Ga. 297, 298-299 (216 SE2d 79) (1975) (statute providing for tolling of limitation periods during active military service "does not toll a statute that provides for the automatic reverter of title to land").

Based on this authority, we conclude that statutory reversion of title occurs automatically and independently of the operation of statutes of limitation. Once automatic reversion occurs, as it had here, the deed holder's right of foreclosure is extinguished, regardless of the running (or tolling) of any applicable limitation period, and regardless of any equitable considerations.[3] See *Griggs*, 363 Ga. App. at 87-89 (3) (rejecting arguments that reversionary period should be tolled while deed holder initiated, but later withdrew, foreclosure proceedings; or during the grantor's active military service; or because not tolling would be "manifestly unjust"). The trial

---

[3] With respect to the special master's conclusion that DIP's delay in foreclosing is partly attributable to the property's entanglement in litigation, we note that one of the lawsuits was filed by DIP itself, before reversion occurred.

10

court therefore erred by ruling that DIP owns the property in fee simple based on its foreclosure under the security deed, and we reverse its holding in that regard.

2. White Properties also argues that the trial court erred by adopting the special master's finding that the 2014 tax sale was void. We disagree. "Collateral estoppel, or issue preclusion, precludes the re-litigation of an issue that was previously litigated and decided on the merits in another action between the same parties and their privies." *Ruth v. Herrmann*, 291 Ga. App. 399, 400 (1) (662 SE2d 726) (2008) (citation and punctuation omitted). As noted, the validity of the tax sale was decided adversely to White Properties by a prior judgment entered in Fulton County Superior Court, which we affirmed on appeal. White Properties is therefore precluded from re-litigating that issue here.[4]

---

[4] White Properties argued before the special master that res judicata precluded DIP from seeking to quiet title in this action because it could have raised that claim in the prior litigation. The special master ruled that res judicata did not apply because some of the defendants named in the instant action were not named in the first action. We express no opinion on the correctness of that ruling, which has not been challenged in this appeal. However, we note that for the purpose of collateral estoppel, the privity or party-identity requirement is met where "the party to the first suit represented the interests of the party to the second suit." *Minnifield v. Wells Fargo Bank, N. A.*, 331 Ga. App. 512, 517 (3) (771 SE2d 188) (2015). Here, the same parties—White Properties and DIP—litigated the propriety of the tax sale in the prior suit.

11

3. In light of our decision in Division 1 that DIP did not acquire title to the property through its April 2019 foreclosure, we do not reach White Properties's arguments that DIP failed to show a clean chain of title to the security deed and that, alternatively, White Properties is equitably entitled to repayment of the redemption funds it paid at the tax sale.

*Judgment reversed. Doyle, P. J., and Reese, J., concur.*