**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0100. CHAUDHURI v. FANNIN REGIONAL HOSPITAL

BARNES, Presiding Judge.

Swapan Chaudhuri, M. D., sued Fannin Regional Hospital, Inc., for breach of his physician's services contract, seeking payment for services rendered and for services he would have rendered if the hospital had scheduled him to work during the 60 days between his termination notice and the end of the contract. The hospital counterclaimed, seeking the return of money it had already paid Dr. Chaudhuri "for shifts that were not performed in accordance with the Agreement."

After discovery ended, the hospital moved for summary judgment on both the complaint and counterclaim. The trial court granted summary judgment to the hospital on Dr. Chaudhuri's complaint but denied it on the hospital's counterclaim, although the court also set off money due to Chaudhuri against money the hospital had already

paid him. Three months after the trial court ruled, the hospital dismissed its counterclaim, and Dr. Chaudhuri appealed. For the reasons that follow, we reverse.

A trial court properly grants summary judgment when there is no issue of material fact and the record demonstrates that the moving party is entitled to judgment as a matter of law. *Holcim (US) v. AMDG*, 265 Ga. App. 818 (596 SE2d 197) (2004) "On appeal, we review the trial court's grant of summary judgment de novo to determine whether the evidence of record, viewed in a light most favorable to the nonmoving party, demonstrates any genuine issue of material fact." (Citation and punctuation omitted.) Id.

1. In his first and second enumerations of error, Dr. Chaudhuri argues that the trial court erred in construing the contract as prohibiting him from working elsewhere while on call, and in concluding that he was not entitled to be paid for the on-call hours he had already worked.

In this State,

> the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to

2

resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)

*Schwartz v. Harris Waste Mgmt. Group*, 237 Ga. App. 656, 660 (2) (516 SE2d 371 (1999). The existence or nonexistence of an ambiguity is a question of law for the court. *Southeast Atlantic Cargo Operators v. First State Ins.*, 197 Ga. App. 371, 372 (398 SE2d 264) (1990). If the court determines that an ambiguity exists, however, a jury question does not automatically arise, but rather the court must first attempt to resolve the ambiguity by applying the rules of contract construction set forth in OCGA § 13-2-2. Id.

The physician services agreement provided that Dr. Chaudhuri would serve as the Director of Hospitalist Services for the defendant Fannin Regional Hospital from February 1, 2007 to January 31, 2010.[1] Dr. Chaudhuri had been the director of a similar program in Alabama and wanted to help develop the new program at Fannin Regional. The agreement provided that, as the Director, he was required to participate in necessary administrative functions, supervise, manage, and oversee the Service,

---

[1]A hospitalist is a physician who treats only hospitalized patients, substituting as their primary care doctor until they are discharged.

arrange for in-service training, and assist the hospital in obtaining and maintaining accreditation and licenses, among other things. Dr. Chaudhuri was also required to provide inpatient hospitalist coverage, not to exceed a rolling average of fifteen 24-hour shifts per month. If not present at the hospital during his shift, he was required to be on call and to return to the facility within 45 minutes, if necessary. According to Dr. Chaudhuri, Fannin Regional's CEO, Mike Huff, knew that Dr. Chaudhuri worked nights at Northside Hospital Cherokee and lived in Canton, 55 to 60 miles from Fannin Regional. When Dr. Chaudhuri expressed reservations about being able to reach the hospital fast enough to respond to an emergency, he testified, Huff assured him that the distance was no problem, because the emergency room doctors at Fannin Regional would handle any emergencies that arose.

Under "Schedule of Services Required from Contractor," the contract provided: "The Service shall be conducted during those days and times which Facility determines to be necessary in order to properly address patient needs and effectively coordinate with other Services." Of several possible options, including ones that would have specified the number of hours per day and days per week to be worked in-house and on call, Dr. Chaudhuri agreed to provide service "[o]n an as-needed

4

basis as scheduled by the Facility." The following terms are hand-written in the "Billing and Compensation" section of the contract:

> Each scheduled 24 hour shift shall be paid accordingly:
> 8 hours in-house coverage at $125 per hour and
> 16 hours on-call coverage at $25 per hour[,] not to exceed
> a rolling average of fifteen (15) shifts per month.

Finally, the contract included an "Official Time Record" form for Dr. Chaudhuri to complete and return to Fannin Regional periodically.

Dr. Chaudhuri testified that Huff told him in an August 2007 meeting to get someone else to cover nights at Fannin Regional,[2] but he was unable to find anyone to do so and the hospital scheduled him to work on call in September. While on call, Dr. Chaudhuri testified, he was being paid to respond to his beeper, typically 40 to 50 times per shift, and was being paid one-sixth less than when he worked in-house.

After Dr. Chaudhuri worked his regular shifts in September 2007 as scheduled, the hospital refused to pay him for his on-call time. In September 2007, Dr. Chaudhuri returned his reimbursement check for hours worked during the week of

---

[2]While Fannin Regional cites to a document in the record titled "Minutes from Hospitalist Meeting" on August 9, 2007, as support for certain factual contentions, the minutes are hearsay, the veracity of which Dr. Chaudhuri disputes.

September 9 because it did not include payment for the time he was on-call during his shifts. On September 27, 2007, the hospital sent Dr. Chaudhuri a letter informing him that it was terminating his contract in 60 days under Section 3.2 of the Physician Services Agreement, effective on November 26, 2007.[3] The hospital also asked Dr. Chaudhuri to send in completed time sheets differentiating between his on-call and in-house hours, and noted that the on-call provision of his contract required him to return to the facility within 45 minutes of being called. Dr. Chaudhuri returned the completed time sheets as requested.

Ultimately, the hospital declined to pay Dr. Chaudhuri for the on-call hours he worked in September 2007, and refused to schedule him for any shifts in October and November 2007. Dr. Chaudhuri sued Fannin Regional for breach of contract, seeking $21,000 compensation for the 15 shifts he worked in September 2007, and $42,000 for the 30 shifts he should have been scheduled to work in October and November 2007. He also sought attorney fees and expenses of litigation under OCGA § 13-6-11.

The trial court held that Dr. Chaudhuri admitted to "double scheduling" during his on-call shifts at Fannin and continued to "double schedule" after being told to

---

[3]While the letter states that the termination date is effective November 26, 2008, the parties agree that the intended year was 2007.

6

stop. The trial court also found that Dr. Chaudhuri was not entitled to be paid for his on-call time in September 2007 because he could not have returned "in a safe manner" to Fannin Regional within 45 minutes while he was working at Northside.

The contract itself, however, did not prohibit Dr. Chaudhuri from working elsewhere while he was on call, nor did it otherwise restrict the conditions under which he could answer calls from Fannin Regional. It is undisputed that Dr. Chaudhuri was always able to discharge his on-call duties to Fannin Regional by telephone, and therefore never breached the contract provision requiring him to return to the facility within 45 minutes.

To the extent Fannin Regional raises an anticipatory breach of contract claim, anticipatory repudiation arises only upon an unqualified repudiation of the entire contract.

> The "anticipatory repudiation" of a contract occurs when one party thereto repudiates his contractual obligation to perform prior to the time such performance is required under the terms of the contract. Thus when one party to a bilateral contract of mutual dependent promises *absolutely* refuses to perform and repudiates the contract prior to the time of his performance, the innocent party is at liberty to consider himself absolved from any future performance on his part. The breach which will form the basis for an anticipatory breach of contract action is an

7

*unqualified* repudiation of the entire contract prior to the time for performance.

(Citation and punctuation omitted; emphasis in original) *Coffee Butler Serv. v. Sacha*, 258 Ga. 192, 193 (1) (366 SE2d 672) (1988). The record does not support a finding of an anticipatory breach that would absolve Fannin Regional from performing its obligations under the contract.

Accordingly, the trial court erred in finding that Fannin Regional was entitled to summary judgment on Dr. Chaudhuri's claim for unpaid compensation.

2. Dr. Chaudhuri also asserts that the trial court erred in setting off his entitlement to $15,000 in compensation for the in-house hours he worked in September 2007 against Fannin Regional's counterclaim for the recovery of all sums it paid Dr. Chaudhuri for on-call services while he was working at Northside Cherokee.

The contract provides that "any amounts due to [Dr. Chaudhuri] by [Fannin Regional] may be reduced by any and all monies due and owing by [Dr. Chaudhuri] to [Fannin Regional], under this Agreement or any other agreement between the parties, to the extent allowed by law." The trial court found that Fannin Regional was entitled to repayment of the money it previously paid Dr. Chaudhuri for on-call

services while he was working at Northside. Further, although neither party had submitted evidence of the exact number of hours or days involved in Fannin Regional's counterclaim, the trial court found that the amount Dr. Chaudhuri owed Fannin Regional exceeded the money Fannin Regional owed to Dr. Chaudhuri. Therefore, the court concluded, neither party was entitled to recover, because the hospital's claim offset Dr. Chaudhuri's claim.

As addressed in Division 1, however, the contract did not prohibit Dr. Chaudhuri from working elsewhere while he was on call, and no evidence in the record established that he ever breached the contract by failing to return to the hospital in 45 minutes when needed. Accordingly, the trial court erred in finding a set-off.

3. Finally, Dr. Chaudhuri asserts that the trial court erred in finding that he was not entitled to compensation during the 60-day period between the notice of termination and the termination itself. The trial court found that Fannin Regional had no obligation to schedule Dr. Chaudhuri to work, based on the contract provision in which he agreed to provide services "on an as-needed basis as scheduled by the Facility."

Fannin Regional's letter of September 22, 2007 to Dr. Chaudhuri stated that it would "serve as his sixty (60) days prior written notice that the Facility is terminating this agreement . . . effective November 26, 2008 [sic]," in accordance with Section 3.2 of the Physician Services Agreement. Section 3.2 provides:

> Either party may terminate this Agreement, without cause, by providing not less than sixty (60) days prior written notice stating the intended date of termination. In the event that this Agreement is terminated for any reason prior to the expiration of one (1) year from the Effective Date, neither party shall enter into an agreement for similar services with the other party until after the expiration of the first year of the initial term.

In contrast, Sections 3.3 and 3.5 of the agreement provide grounds for immediately terminating the agreement, such as, for example, an arrest, the failure to maintain professional liability insurance, license revocation, or if the hospital closed or was placed into bankruptcy. Section 3.4 outlines another termination provision in the event that a party materially breaches the agreement in a manner other than those set forth in Sections 3.3 and 3.5. In that case, the other party could have elected to terminate the agreement by giving not less than 30 days written notice specifying the nature of the breach, after which the breaching party had 15 days to remedy the breach or the agreement would be terminated at the end of the 30-day notice period.

10

"The rules of construction require the court to consider the policy as a whole, to give effect to each provision, and to interpret each provision to harmonize with each other." *ALEA London Ltd. v. Woodcock*, 286 Ga. App. 572, 576 (2) (649 SE2d 740) (2007). The court should avoid interpreting a contract in a way that renders portions of it meaningless. *Georgia Farm Bureau Mut. Ins. Co. v. Gaster*, 248 Ga. App. 198, 199 (546 SE2d 30) (2001); OCGA § 13-2-2 (4); *Holloman v. D.R. Horton*, 241 Ga. App. 141, 142 (1) (a) (524 SE2d 790) (1999).

Fannin Regional argues, and the trial court found, that it was not obliged to pay Dr. Chaudhuri anything in October and November 2007, after its notice but before the actual termination date, because the contract did not require the hospital to schedule him for any shifts. But this interpretation of the provision that Dr. Chaudhuri would provide services "on an as-needed basis as scheduled by the Facility" would render meaningless the contract's provisions distinguishing between offenses that are grounds for immediate termination from offenses that are grounds for possible termination if not cured, and the provisions for termination without cause, all of which have different notice requirements. Why require a 60-day notice before a party may terminate the contract without cause if the notice is meaningless?

11

Thus, the "as-needed" language of the contract and its termination and notice provisions are ambiguous. "This ambiguity requires application of the usual rules of construction. One of those rules is to consider the background of the contract and the circumstances under which it was entered into, particularly the purpose for the particular language to be construed." (Citations and punctuation omitted.) *Horwitz v. Weil*, 275 Ga. 467, 469 (569 SE2d 515) (2002).

The hospital had been scheduling Dr. Chaudhuri to work 15 shifts per month. Dr. Chaudhuri testified that in October and November 2007, after giving him the 60-day termination notice, the hospital needed him but would not schedule him to work. Instead, the only other full-time hospitalist at the hospital was scheduled to work 25 shifts in October 2007, which was "outright dangerous from the patient care point of view," according to Dr. Chaudhuri, and also scheduled him to work an excessive number of shifts in November 2007.

Applying the applicable rules of construction, considering the circumstances and background under which the contract was created, Fannin General was obliged to schedule Dr. Chaudhuri for 15 shifts in October and November 2007. The hospital is therefore required to reimburse him for that amount of time.

12

Accordingly, the trial court erred in granting summary judgment to Fannin Regional and in setting off money due to Dr. Chaudhuri.

*Judgment reversed. Adams and McFadden, JJ., concur.*