**FIRST DIVISION**
**McFADDEN, BOGGS AND BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 16, 2013**

# In the Court of Appeals of Georgia

A11A1487. THE ESTATE OF MACK PITTS et al. v. CITY OF ATLANTA et al.

McFADDEN, Judge.

This case returns to us from the Supreme Court of Georgia. It is an appeal from the trial court's rulings on cross-motions for summary judgment in a case brought by the estate and the minor children of Mack Pitts (collectively, "the Estate") against the City of Atlanta ("the City") and against two joint ventures ("the construction companies") – one comprised of Holder Construction Company, Manhattan Construction Company, C. D. Moody Construction Company, Inc., and Hunt Construction Company, Inc. ("the General Contractor") and the other comprised of Archer Western Contractors, Ltd. and Capital Contracting, Inc. ("the

Subcontractor").[1] The Estate alleged that Pitts, who was killed in an accident while working on the construction of the international terminal at Atlanta's Hartsfield-Jackson International Airport, was an intended beneficiary of promises within contracts among the City, the General Contractor, and several tiers of subcontractors (including the defendant Subcontractor), requiring the contractors and subcontractors to obtain certain levels of automobile liability insurance coverage and to require their subcontractors to do the same. The Estate alleged that the defendants had breached these promises. It also alleged that the City had breached a separate duty to ensure that all contractors and subcontractors maintained the required insurance.

The trial court granted the defendants' motions for summary judgment and denied the Estate's motion for summary judgment. In *Estate of Pitts v. City of Atlanta*, 312 Ga. App. 599 (719 SE2d 7) (2011) ("*Pitts I*"), we affirmed in part and reversed in part, finding that the Estate was entitled to summary judgment on its contract claims against all of the defendants, but that the City was entitled to summary judgment on the claim for breach of the separate duty. In *Archer Western Contractors*

[1] The City and the construction companies have sought leave in this appeal to file a response to a Power Point presentation that the Estate made at oral argument. They attached the response to their motion. We grant the motion and have considered the response.

2

*v. Estate of Pitts*, 292 Ga. 219 (735 SE2d 772) (2012) ("*Pitts II*"), the Supreme Court vacated our judgment and remanded the case to us with direction. We therefore vacate our earlier decision.

The Estate argued in *Pitts I* that the trial court erred in its grant of summary judgment to the City on its claim for breach of a separate duty, independent of contract. We affirmed the trial court on the ground that no evidence of such a duty existed. *Pitts I*, 312 Ga. App. at 609 (2). The Supreme Court did not address this portion of our opinion. *Pitts II*, 292 Ga. at 119 n. 1.

The Estate also claimed that the City had breached a contractual duty for which Pitts was an intended third party beneficiary. We held that the Estate was entitled to summary judgment on this claim. *Pitts I*, 312 Ga. App. at 602 (1). The Supreme Court, however, found no evidence of breach of any contractual duty by the City, effectively reversing our holding. *Pitts II*, 292 Ga. at 228-230 (3).

Finally, the Estate claimed that the construction companies had breached a contractual duty for which Pitts was an intended third party beneficiary. We held that it was entitled to summary judgment on this claim. In so holding, we determined that contract language – specifically the term "all participants" – unambiguously included a worker such as Pitts among the intended beneficiaries of the minimum automobile

3

liability coverage requirement. *Pitts I*, 312 Ga. App. at 603-604 (1) (a) (i). The Supreme Court disagreed, instead finding the term "all participants" to be susceptible of more than one reasonable meaning. *Pitts II*, 292 Ga. at 225-226 (2). Having determined that "all participants" is ambiguous as used in the subject contracts, the Supreme Court remanded the case to us with instructions. We are to determine whether that ambiguity can be resolved as a matter of law. We proceed accordingly.

As to the City, we again affirm the trial court's grant of summary judgment on the claim for breach of a duty independent of the contracts. We also affirm the trial court's grant of summary judgment to the City and its denial of summary judgment to the Estate on the Estate's claim for breach of contract against the City.

As to the construction companies, however, after having applied the rules and canons of contract construction and considered parol evidence, we remain convinced that the parties to the contract intended a worker such as Pitts to be a third party beneficiary of the promises made by the construction companies to obtain the required minimum automobile liability insurance coverage and to ensure that their subcontractors of all tiers did so as well. We again find that the undisputed evidence shows that these promises were breached, that the Estate was harmed thereby, and that the exclusive remedy provisions of the Workers' Compensation Act do not apply.

4

Accordingly, we again reverse both the trial court's grant of summary judgment to the construction companies and its denial of summary judgment to the Estate.

1. *Facts and procedural posture.*

The facts and procedural posture of this case are set forth in detail in *Pitts I*, 312 Ga. App. at 599-602, and *Pitts II*, 292 Ga. at 220-223 (1). In summary, Mack Pitts was killed when he was struck by a truck driven by an employee of A&G Trucking, Inc. while Pitts was working on the construction of the international terminal at Hartsfield-Jackson International Airport. The Estate won a wrongful death judgment against A&G Trucking, which could not satisfy that judgment. The Estate then brought the instant action against the City, alleging breach of contract and breach of ministerial duty, and against the construction companies, alleging breach of contract.

Specifically regarding the breach of contract claim, the Estate alleged that the construction companies were required by contract to purchase and maintain automobile liability insurance with bodily injury coverage of at least $10,000,000 per person and occurrence and to bind lower tier subcontractors to this minimum coverage requirement. See generally *Pitts II*, 292 Ga. at 220-223 (1) (describing contractual provisions); *Pitts I*, 312 Ga. App. at 601-602 (same). The minimum

coverage requirement was set out in a 15-page document, entitled "Owner's Controlled Insurance Policy," which was an addendum to the City's contract with the General Contractor. See *Pitts II*, 292 Ga. at 222 (1). In its opinion, the Supreme Court termed this 15-page document the "OCIP addendum," see id., and we adopt that terminology for this opinion.

In the contract between the City and the General Contractor, the General Contractor agreed to abide by the minimum coverage requirements in the OCIP addendum, and to require its subcontractors to do the same. See *Pitts II*, 292 Ga. at 223 (1). In a subcontract between the General Contractor and the defendant Subcontractor, the Subcontractor also agreed to be bound by these terms and to require the same of its lower-tier subcontractors. See *Pitts I*, 312 Ga. App. at 601-602. In *Pitts I*, we held that A&G Trucking was such a lower-tier subcontractor and was subject to the minimum coverage requirement, id. at 602-603 (1), and the Supreme Court has not held otherwise. A&G Trucking did not carry automobile liability insurance satisfying the minimum coverage requirement set forth in the OCIP addendum.

2. *Action for breach of duty against the City.*

6

In Division 2 of our decision in *Pitts I*, we affirmed the trial court's grant of summary judgment to the City on the Estate's claim against it for breach of a duty that the Estate argued arose independently of the contracts; the Estate cited OCGA § 51-1-8 for the source of this duty. *Pitts I*, 312 Ga. App. at 608-609 (2). The Supreme Court neither addressed nor considered this portion of our opinion, instead noting that this separate claim of the Estate "is not before us, and we, therefore, say nothing more about it." *Pitts II*, 292 Ga. at 119 n. 1. Accordingly, our ruling in Division 2 was not disturbed by the Supreme Court and remains the law of the case. *Shadix v. Carroll County*, 274 Ga. 560, 563-564 (1) (552 SE2d 465) (2001); *Ford v. Uniroyal Goodrich Tire Co.*, 270 Ga. 730, 731 (514 SE2d 201) (1999); *Mayor & Aldermen of Savannah v. Batson-Cook Co.*, 318 Ga. App. 152, 154 (734 SE2d 743) (2012). We again affirm the grant of summary judgment to the City on the separate claim of breach of a private duty.

3. *Action for breach of contract against the City.*

The Supreme Court held that neither the contract between the City and the General Contractor, nor the OCIP addendum incorporated therein, contained a "promise by the City to ensure that subcontractors carried adequate insurance." *Pitts II*, 292 Ga. at 229 (3). The Supreme Court further held that, "[t]o the extent that the

7

Court of Appeals concluded that the City failed to fulfill these obligations [to maintain the required and necessary OCIP policies and to procure, pay for and administer the OCIP] with respect to automobile liability insurance for A&G Trucking, it erred." Id. We adopt these rulings as our own and find no contractual duty on the part of the City to ensure that A&G Trucking carried the amount of automobile liability coverage required by the OCIP addendum. Accordingly, we affirm the trial court's grant of summary judgment to the City on the Estate's claim for breach of contract.

4. *Breach of contract claim against the construction companies.*

The parties dispute whether Mack Pitts was an intended third party beneficiary of the contract requirement regarding minimum automobile liability insurance coverage and, if so, whether the exclusive remedy provision of the Worker's Compensation Act bars the Estate's breach of contract action against the construction companies. We held in *Pitts I* that Pitts was an intended third party beneficiary under the unambiguous contract language, 312 Ga. App. at 603-605 (1) (a) (i), and we held that the exclusive remedy provision did not bar the Estate's claim. Id. at 605-607 (1) (a) (ii). The Supreme Court disagreed with our analysis regarding Pitts's status as a third party beneficiary, and it vacated our judgment and remanded the case to us for

8

reconsideration. *Pitts II*, 292 Ga. at 230 (4). The Supreme Court did not reach the exclusive remedy question. Id. at 230 n. 17 (4).

As our Supreme Court recently has reiterated, contract construction proceeds in a series of steps, moving from one to the next only if necessary.

> The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Because the first two of these steps involve questions of law, the trial court's application of them is reviewed de novo on appeal.

*City of Baldwin v. Woodard & Curran, Inc.*, __ Ga. __, __ (3) (__ SE2d __) (Case No. S12G1842, decided May 20, 2013) (citations omitted).

Citing a dictionary definition, we held that "participant" is an "ordinary word" and therefore should be given its "usual significance," that its usual significance is as a general term broad enough to encompass Pitts, and therefore that the disputed provision is unambiguous, and that it was unnecessary to proceed beyond the first

9

step. See *Pitts I*, 312 Ga. App. at 603-604 (1) (a) (i) (citing *Perkins v. M&M Office Holdings*, 303 Ga. App. 770, 773 (695 SE2d 82) (2010); Webster's New Collegiate Dictionary, p. 829 (1981)). See generally *Blueshift, Inc. v. Advanced Computing Technologies*, 273 Ga. App. 802, 805 (2) (616 SE2d 816) (2005) (court may not look to statutory rules of contract construction or consider parol evidence if it finds contract is unambiguous on its face).

On further reflection, and aided by the subsequent publication of Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts (West 2012), we conclude that our earlier analysis is better stated as a determination that, while some ambiguity was created by the drafters' failure to set out a definition for "participants," that ambiguity is resolved by the application of what Scalia and Garner call the "General-Terms Canon":

> Without some indication to the contrary, general words (like all words, general or not) are to be accorded their full and fair scope. They are not to be arbitrarily limited. This is the general-terms canon, which is based on the reality that it is possible and useful to formulate categories (e.g., "dangerous weapons") without knowing all the items that may fit – or may later, once invented, come to fit – within those categories.

Some think that when courts confront generally worded provisions, they should infer exceptions for situations that the drafters never contemplated and did not intend their general language to resolve. These people want courts to approach general words differently from how they approach words that are narrow and specific. Traditional principles of interpretation reject this distinction because the presumed point of using general words is to produce general coverage – not to leave room for courts to recognize ad hoc exceptions. It is true that literal meaning is more readily discernible when the provisions are concrete and specific than when they are abstract and general, and one is right to hesitate and ponder before deciding that a specific factual situation falls within the coverage of a general provision. But in the end, general words are general words, and they must be given general effect.

Id. at 101.

Of course, "[n]o canon of interpretation is absolute. Each may be overcome by the strength of differing principles that point in other directions." Id. at 59. And our Supreme Court has held that the relevant contract language is subject to more than one reasonable construction. See *Pitts II*, 292 Ga. at 224-226 (2). Ambiguity exists when "more than one reasonable construction may be placed upon the language of an agreement." *In re Estate of Sims*, 259 Ga. App. 786, 790 (1) (578 SE2d 498) (2003). The Supreme Court remanded the case for us to proceed with the next steps of contract construction to attempt to resolve the ambiguity.

11

(a) *Structure and content of the OCIP addendum.*

The OCIP addendum contains the minimum automobile liability coverage requirement that A & G Trucking did not meet. As stated above, the OCIP addendum is a 15-page document entitled "Owner's Controlled Insurance Program," which was incorporated into the contracts at issue in this case. The six parts of the OCIP addendum, detailed below, include a summary section (Part 1), a section setting forth the insurance coverage to be provided by the "Owner," which is the City (Part 3), and a section setting forth the insurance coverage to be provided by contractors (Part 5).

Part 1, entitled "Summary," contains the disputed use of "all participants." In its entirety it states:

A. Insurance:

1. Notwithstanding anything to the contrary, in the agreement to which this Appendix [the OCIP addendum] is attached or in any other agreement between Contractor, Owner and/or Architect, Construction Manager, General Engineering Consultant, or their respective Subconsultants, Subcontractors, Agents, Employees or Representatives, the parties hereto agree as follows:

2. The Owner will employ an "Owner Controlled Insurance Program," (OCIP) for this project for all activities performed on Airport property. *The purpose of the OCIP is to provide one master insurance program*

12

*that provides broad coverages with high limits that will benefit all participants involved in the project.* The Owner, if electing the OCIP, shall procure, pay for and administer the OCIP during the duration of the program. The program will include the following coverages:

☐ Worker's Compensation

☐ Commercial General Liability

☐ Excess/Umbrella Liability

☐ Contractors Pollution Liability

☐ Builders Risk

☐ Professional Liability

B. The Named Insured shall include the Owner, Contractors and Subcontractors of any tier (excluding suppliers) for whom the Owner has agreed to furnish an OCIP.

C. Coverage shall be limited to the project site.

(Emphasis supplied.)

Part 2 of the OCIP addendum, entitled "Evidence of Insurance Cost," provides a sample construction insurance information form to be used by contractors in submitting a bid, sets forth other information and instructions to be used by

13

contractors in submitting bids, and provides for a contractor warranty regarding the information submitted in a bid.

Part 3 of the OCIP addendum, entitled "Insurance Coverages Provided," describes the various types of insurance coverage to be provided by the Owner. The types of coverage described in Part 3 include those listed in the Part 1 "Summary." Part 3 also describes certain contracts to be excluded from the coverages listed therein. And Part 3 contains the following statement of purpose:

> The Owner, at its sole expense, will implement an Owner-Controlled Insurance Program (OCIP) to furnish certain insurance coverages as respects on-site activities. The OCIP will be for the benefit of the Owner and Contractors and Subcontractors *of all tiers* (unless coverage applies only to work performed under the Contract at the project site and the Contractor and all approved Subcontractors must provide their own insurance for off-site activities. The OCIP is *not* intended to cover consultants, suppliers vendors or materials dealers.

(Punctuation presented as in original; emphasis in original.)

Part 4 of the OCIP addendum sets forth a variety of "General Provisions." Pertinently, these include a prohibition against contractors beginning work without a policy or certificate of insurance and a requirement that contractors "incorporate a

copy of these Insurance Specifications in each subcontract and . . . require each of his Subcontractors of any tier to comply with these Insurance Specifications."

Part 5 of the OCIP addendum, entitled "Contractor's Insurance To Be Provided," contains the minimum coverages requirement at issue in this case. Part 5 pertinently provides that a contractor shall:

> at is own expense, purchase and maintain in a company or companies licensed to do business in the State of Georgia, and acceptable to Owner, such insurance as will protect Contractor, Owner, Construction Manager, Design Consultant, and their Trustees, Directors, Officers, Partners, Agents, Representatives, and Employees from claims of the type set forth below[.]

It then describes the automobile liability insurance coverage requirements at issue here, as well as other types of insurance coverage required thereunder. Part 5 also requires contractors to furnish insurance certificates to the owner before beginning to work at the construction site, and it requires that the City and the airport are named as additional insureds.

Finally, Part 6 of the OCIP addendum, entitled "Claim and Accident Reporting Procedures," provides that "[t]he immediate reporting of all circumstances which might lead to, or involve a CLAIM is a requirement and non-compliance could result

15

in denial of an equitable disposition of the situation, by the Insurance Carrier(s)." Part 6 sets forth "minimum requirements for specific circumstances," including the requirement for automobile accidents, such as the accident that killed Pitts.

(b) *Determining the meaning of the term "all participants" in the statement of purpose in Part 1 of the OCIP addendum.*

In *Pitts I*, we focused on the statement within Part 1 of the OCIP addendum that the purpose of the OCIP is "to provide one master insurance program that provides broad coverages with high limits that will benefit all participants involved in the project." Citing a dictionary definition of "participant" as "one who participates," we held that the phrase "all participants" unambiguously included Pitts because, as a person working on the construction project through his employment by a subcontractor, Pitts was participating in the construction project. *Pitts I*, 312 Ga. App. at 603-604 (1) (a) (i). The Supreme Court and the construction companies each offer alternative interpretations, which we will address in turn. We note that the Supreme Court presented its alternative as a possibility which we are to consider, not as a ruling. See *Pitts II*, 292 Ga. at 225-226 (2), 230 (4). Consequently, its suggested alternative construction is not the law of the case. See *Shadix*, 274 Ga. at 563 (1).

(i) *"All participants" as "enrollees in a preexisting OCIP."*

16

The Supreme Court agreed with us that it was appropriate to consult a dictionary for the accepted definition of the word "participant," and it also agreed that a "participant" is one that has "a part or share in something." *Pitts II*, 292 Ga. at 224 (2). See generally Scalia and Garner, at 69 ("Words are to be understood in their ordinary, everyday meanings – unless the context indicates that they bear a technical sense."). But it found that this definition did not reveal the "something" in which the "participants" referred to in Part 1 had a part or shares. *Pitts II*, 292 Ga. at 224 (2). Accordingly, the Supreme Court found our interpretation of the phrase "all participants" as participants in the construction project to be "not the only reasonable understanding of that term." Id. at 225 (2).

Finding that the City and the General Contractor had used the term "OCIP" in two different senses in their contract – "in some places to the entirety of the insurance requirements set out in the OCIP addendum," id. (footnote omitted), and in other places "more specifically to [a] preexisting program by which the City itself procures and maintains the insurance for which it is responsible on construction projects in which it is involved," id. (footnote omitted) – the Supreme Court proposed an alternative understanding of the term "all participants," namely participants in the preexisting OCIP. Id. at 225-226 (2).

17

The Supreme Court indicated that this alternative construction could explain the phrase "involved in the project" that follows the term "all participants," id. at 226 (2) n. 12, a phrase that the Supreme Court found "somewhat redundant" under the interpretation of "all participants" that we reached in *Pitts I. Pitts II* at 225 (2) (citation omitted). Specifically, the Supreme Court suggested that there might be some enrollees in the preexisting OCIP that were not involved in the project at issue in this case, and thus the phrase "involved in the project" could serve to limit the larger category of "all participants" if that category is viewed to mean "enrollees in the preexisting OCIP." See id. at 226 (2) n. 12.

We agree that it is reasonable to infer that a preexisting OCIP might have enrollees not involved in this specific construction project. But we find no evidence that the parties intended to refer to any such larger group by the use of the term "all participants" in the OCIP addendum. In Georgia, "[t]he cardinal rule of contract construction is to ascertain the intention of the parties," OCGA § 13-2-3, and "[e]very other rule is subservient to this one." *Paul v. Paul*, 235 Ga. 382, 384 (219 SE2d 736) (1975) (citation and punctuation omitted). We find nothing in the language of the contracts themselves indicating that the parties to these contracts had identified such a larger group of enrollees for any purpose related to the contracts, much less for the

18

purpose of defining the term "all participants" in the OCIP addendum. The contracts do not expressly define such a larger group of OCIP enrollees, nor do they contain language addressing such a larger group's rights, obligations or interests. Likewise, we have found no parol evidence suggesting that the term "all participants" was intended to refer to a larger group of enrollees in a preexisting OCIP, thereby providing a limiting purpose for the phrase "involved in the project." While the record contains some extrinsic evidence regarding the independent existence of an OCIP, as the Supreme Court found, see *Pitts II*, 292 Ga. at 222 (1) n. 4, the record also contains the testimony of the City's 30 (b) (6) representative, see OCGA § 9-11-30 (b) (6), who stated that the OCIP in this case was "unique to the airport project" and did not pertain to any other City projects. This testimony conflicts with an interpretation that some of the "participants" referred to in the OCIP addendum were not "involved in the project."

We do not ignore the possibility that, in the construction industry, the term "participants" has a specialized meaning relating to a preexisting OCIP. See generally Ruth Kochenderfer and James P. Bobotek, Construction Wrap-Up Policies: An Overview and Analysis of Selected Coverage Issues, 2011 Emerging Issues 5919 (Sept. 26, 2011) (using term "participant" in manner suggesting it may have specific

19

meaning in context of Owner's Controlled Insurance Program). "[T]echnical words, words of art, or words used in a particular trade or business will be construed, generally, to be used in reference to this particular meaning." OCGA § 13-2-2 (2). But the construction companies have neither argued in their appellate briefs nor pointed to any parol evidence of such an industry meaning. Compare *Pace Construction Corp. v. Houdaille-Duvall-Wright Div., Houdaille Indus.*, 247 Ga. 367, 368 (276 SE2d 568) (1981).

The only rule of construction we discern that supports the construction of "all participants" to mean a larger category of enrollees in a preexisting OCIP, only some of whom were involved in the airport construction project, is the rule that the "construction which will uphold a contract in whole and in every part is to be preferred." OCGA § 13-2-2 (4). As the Supreme Court posited, if there was in fact such a larger category, then the phrase "involved in the project" could serve the purpose of limiting that category. But this assumes the existence of such a larger group of enrollees. If instead, as the City's 30 (b) (6) representative testified, the OCIP was "unique" to the airport construction project, then the inclusion of the phrase "involved in the project" would not serve this limiting purpose and the phrase would remain, as the Supreme Court described, "somewhat redundant." *Pitts II*, 292

Ga. at 225 (2) (citation omitted). Given this testimony, and the lack of any indication in the language of the contract that the parties intended to describe such a larger group, we conclude that the rules of contract construction do not support such an interpretation of the phrase "all participants."

(ii) *"All participants" as "the parties identified as the beneficiaries of the OCIP in Part 3 of the OCIP addendum."*

The construction companies argue that the term "all participants" in Part 1 of the OCIP addendum refers only to the parties specified as beneficiaries of the "OCIP" in Part 3 of the OCIP addendum – "the Owner and Contractors and Subcontractors of all tiers." (Emphasis omitted.) They reason that the term "all participants" in Part 1 refers to participants in the "OCIP," and they further reason that the term "OCIP" in Part 1 refers only to the insurance coverage discussed in Part 3 of the OCIP addendum. Consequently, they argue that the beneficiaries referred to in Parts 1 and 3 of the OCIP addendum must be the same, and that the more specific description of those beneficiaries in Part 3 governs over the broader description of those beneficiaries in Part 1. See *Avian Sys. v. Thomson*, 293 Ga. App. 60, 63 (2) (a) (666 SE2d 464) (2008) ("when a provision specifically addresses the issue in question, it prevails over any conflicting general language") (citation and punctuation omitted).

21

But as the Supreme Court held, the contracts in this case use the term "OCIP" in more than one sense. *Pitts II*, 292 Ga. at 225 (2). Because the parties to the contracts have not used that term consistently, we cannot assume that they meant to use the term in the same way in Part 1 and Part 3. Moreover, the overall structure of the OCIP addendum indicates that the parties meant something different – and broader – in Part 1 than they did in Part 3. "The intention of the parties to a contract is ascertained from the entire contract, considering each provision in connection with the others, and not giving the contract a construction which entirely neutralizes one provision if it is susceptible of another which gives effect to all of its provisions." *White v. Kaminsky*, 271 Ga. App. 719, 722 (610 SE2d 542) (2004) (citation omitted); see also OCGA § 13-2-2 (4). Each provision should be interpreted to harmonize with the others. *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 38 (2) (625 SE2d 435) (2005) (citation and punctuation omitted). See generally Scalia and Garner, supra, at 167-168 (discussing role of the structure of an entire text, and the physical and logical relation of its many parts, in the text's construction).

Here, the entire OCIP addendum is titled "Owner's Controlled Insurance Program," and Part 1, a separate section at the start of the document, is headed "Summary." See Scalia and Garner, supra, at 221 (a document's title and headings are

22

permissible indicators of meaning). The OCIP addendum does not contain language expressly limiting this summary to Part 3. The purpose of the "OCIP," as that term is used in the summary's statement of purpose, is to provide "*one* master insurance program" with broad coverage. (Emphasis supplied.) See Scalia and Garner, supra, at 56 ("words are given meaning by their context, and context includes the purpose of the text"). And the OCIP addendum sets forth coverage requirements in Part 5 as well as Part 3.

The construction companies' proposed interpretation, that the statement of purpose in the Part 1 "Summary" applies only to the coverages set forth in Part 3, would render the word "one" meaningless, contrary to the canon that, "[i]f possible, every word . . . is to be given effect." Scalia and Garner, supra, at 174. See *Chandhuri v. Fannin Regional Hosp.*, 317 Ga. App. 184, 189 (3) (730 SE2d 425) (2012). The OCIP addendum provides for more insurance coverage than just that addressed in Part 3, and the construction companies admit in their appellate brief that insurance to be supplied by contractors under Part 5 of the OCIP addendum is part of the "insurance for the [p]roject." Although the construction companies argue that the purpose of Part 5 is to outline the insurance coverage that is *not* provided in the OCIP, the language and structure of the document do not reflect that intent. Part 5 is

23

not phrased as an exception to the "*one* master insurance program," but rather it exists as another part of the OCIP addendum setting forth insurance requirements. Although Part 1 contains a list of only those types of insurance set forth in Part 3, the list uses inclusive rather than exclusive language and follows a sentence addressing the insurance listed in Part 3 – that for which the City is obligated. We do not read that list as excluding any of the other types of insurance provided for in the OCIP addendum from the "*one* master insurance program" discussed in the OCIP addendum's Summary.

Furthermore, the language in the statement of purpose in Part 1 is significantly different than that in Part 3. Part 1 uses broader terms – the beneficiaries are "all participants involved in the project." In contrast, Part 3 lists only three specified categories of persons and entities. Part 1 describes the beneficiaries as benefitting from "coverages," while Part 3 describes them as benefitting from the "OCIP." And, as described above, the OCIP addendum contains provisions for "coverages" that go beyond the specific owner-provided coverages addressed in Part 3. If the parties wanted to limit the beneficiaries in Part 1 to the limited group of persons and entities identified in Part 3, they knew how to do so. They could have used the language in Part 3. And in fact, they identified those very categories as "Named Insureds" later

24

in Part 1. But they chose different language – "all participants" – to describe the beneficiaries of the coverages provided by the "one master insurance program." We conclude that the beneficiaries referred to in Part 1 are *not* the same as those referred to in Part 3. See *Ins. Co. of the State of Pa. v. APAC-Southeast*, 297 Ga. App. 553, 558 (677 SE2d 734) (2009).

"Without some indication to the contrary, general words [such as "participants"] are to be accorded their full and fair scope. They are not to be arbitrarily limited." Scalia and Garner, supra, at 101. Reading the contract as a whole, we do not see a basis for limiting the term "all participants" to only those categories of persons or entities described as beneficiaries in Part 3.

(iii) *"All participants" as "participants in the construction project."*

Finally, we reconsider the construction of the OCIP addendum that we reached in *Pitts I*, that the term "all participants" refers to participants in the construction project, including employee Mack Pitts. As discussed above, the Supreme Court found that this interpretation rendered the phrase "involved in the project" somewhat redundant. *Pitts II*, 292 Ga. at 225 (2). The redundancy is created by the use of the word "involved"– had the language simply read "all participants in the project," the phrase "in the project" would quite clearly serve to identify the "something" in which

25

the "participants" had a part or share. See generally id. at 224 (2) (finding the dictionary definition of "participant" insufficient to construe term because it did not "identify the 'something' in which a 'participant' has a part or shares").

Nevertheless, we do not find that the inclusion of the word "involved" in the statement of purpose reflects an intent that the parties meant "all participants" to refer to those participating in something other than the construction project. Given the structure of the OCIP addendum, the parties' choice to use broader language in the "Summary" of the document, and the lack of either language within the documents or parol evidence suggesting a different meaning by the parties, we conclude that the application of rules of contract construction points to construing the phrase "all participants" to mean those participating in the airport terminal construction project.

Parol evidence supports this interpretation as well. See OCGA § 13-2-2 (1) (allowing parol evidence to explain latent or patent ambiguities in a contract). The witness designated by the City pursuant to OCGA § 9-11-30 (b) (6) to testify to "matters known or reasonably available to the organization" agreed that a worker such as Pitts was a "participant," as that term was used in the OCIP addendum's statement of purpose. Although the City's OCIP supervisor averred that a company must complete an OCIP registration form to "participate" in a City project, he also

26

indicated that one could "participate" in the airport terminal project as a "non-OCIP enrollee." The 30 (b) (6) witnesses of both the City and the defendant Subcontractor also testified that the insurance procured by contractors and subcontractors was a component of the OCIP.

Accordingly, we find that, through application of the rules and canons of contract construction and a consideration of parol evidence, we can resolve the ambiguity identified by the Supreme Court in the statement of purpose contained in Part 1 of the OCIP addendum. We find that language to reflect the parties' intent that a person such as Pitts was a "participant" intended to benefit from the coverages provided by the "one master insurance program" set forth in the OCIP addendum.

(c) *The Estate's standing to enforce specific promises regarding minimum automobile liability insurance coverage.*

The Supreme Court held in *Pitts II* that "status as a third-party beneficiary does not imply standing to enforce every promise within a contract, including those not made for that party's benefit." 292 Ga. at 226-227 (2) (citations and punctuation omitted). Instead, a third party beneficiary "can only enforce those promises made directly for his benefit." Id. at 227 (2) (citation and punctuation omitted). The Supreme Court directed us to identify the specific contract provisions alleged to have

been breached in this case and to consider whether Pitts was an intended beneficiary of those specific provisions, noting that Pitts "might or might not" be an intended beneficiary of the provision requiring that the General Contractor bind its subcontractors to the terms of its contract with the City, or to the provision in the OCIP addendum requiring that contractors provide automobile liability insurance coverage in a minimum amount. Id. at 228 (2).

The specific promises at issue here are those by both the General Contractor (in its contract with the City) and the defendant Subcontractor (in its contract with the General Contractor) to comply with and to require their subcontractors to be bound to all of the terms of the General Contractor's contract with the City. Specifically, the contract between the General Contractor and the City provided, in paragraph 13.2 (1), that the General Contractor, subcontractors and sub-subcontractors "shall . . . comply with all requirements of the OCIP" attached to that contract (the OCIP addendum). The General Contractor also promised in paragraph 5.3.1 of that contract to

> require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the [General Contractor] by the terms of the Contract Documents, and to assume toward the [General Contractor] all the obligations and responsibilities which the [General Contactor] by Contract Documents assumes toward the [City].

28

And the General Contractor promised in paragraph 13.3 (1) that it

> shall not commence any construction Work in connection with this Agreement until it has fulfilled all its requirements under the OCIP and obtained all of the following types of insurance and such insurance has been approved by the [City], nor shall the [General Contractor] allow any Subcontractor or sub-subcontractor to commence work on its Subcontract until the Subcontractor has fulfilled all its requirements under the OCIP and obtained all similar insurance required of the Subcontractor or sub-subcontractors. . . . The Insurance requirements are attached as Appendix "B" [the OCIP addendum].

That contract further stated in paragraph 13.3 (2) that the General Contractor "shall require each of its Subcontractors to procure and maintain during the life of any Subcontract, Insurance of the type specified in Appendix "B" [the OCIP addendum], except as otherwise agreed to by the [City]." Those terms included the minimum automobile liability insurance requirements set forth in Part 5 of the OCIP addendum.

The contract between the City and the General Contractor, in paragraph 5.3.1, required the General Contractor to "make available to each proposed Subcontractor, prior to the execution of the Subcontract, copies of the Contract Documents to which the Subcontractor will be bound by this [article]" and required "[e]ach Subcontractor [to] similarly make copies of such documents available to its Sub-Subcontractors."

29

In paragraph 1.2 of the contract between the General Contractor and the defendant Subcontractor, the defendant Subcontractor "agree[d] to be bound to [the General Contractor] by the terms and conditions of the Contract Documents," which included the contract between the General Contractor and the City. The defendant Subcontractor also agreed in that paragraph to "assume[ ] toward [the General Contractor] all of the duties and obligations that [the General Contractor] has by the Contract Documents assumed toward [the City]."

To determine whether Pitts was an intended beneficiary of these particular promises, we again look to the OCIP addendum's statement of purpose, "to provide one master insurance program that provides broad coverages with high limits that will benefit all participants involved in the project." This statement expresses the intent that *all* participants benefit from the insurance coverages established by the one master insurance program. As explained above, we find that the parties intended the term "all participants" to include a worker on the construction project such as Pitts.

The promises at issue in this case concerned insurance coverages set forth in Part 5 of the OCIP addendum. As discussed above, we construe the "one master insurance program" referred to in the Part 1 statement of purpose to include the Part 5 insurance coverages. The construction companies argue that, even if Pitts was a

"participant" for whose benefit the broad coverages of the one master insurance program was established, he nevertheless was not an intended beneficiary of the minimum automobile liability insurance requirement because the coverage was described with reference to the amount of claims *from* which the insured would be protected, rather than the amount of claims for which a tort claimant could recover. The Supreme Court mentioned this argument in *Pitts II*. 292 Ga. at 228 (2) n. 14.

We do not construe this language to evince an intent by the parties that the intended beneficiaries of this coverage would be different than the intended beneficiaries described in the Part 1 "Summary" of the OCIP addendum. The language in Part 5 specifies the persons and entities who will be insureds, but, unlike Part 1, the language in Part 5 does not discuss the intended beneficiaries of the coverage. And, as seen in Part 1, the parties did not use the terms "beneficiaries" and "insureds" interchangeably. While as a general rule tort claimants are not treated as third party beneficiaries of insurance policies, see *Crisp Regional Hosp. v. Oliver*, 275 Ga. App. 578, 583 (4) (621 SE2d 554) (2005), here the summary provision of the OCIP addendum expressly describes the beneficiaries in a broad manner that encompasses such tort claimants. We will not read into the language of Part 5 an implicit modification of the broad category of beneficiaries established in Part 1 so

as to find Pitts not a beneficiary of coverages set forth in Part 5, given the clear indication in Part 1 that *all* participants were to benefit from the coverages in the one master insurance program.

Likewise, the provisions requiring the construction companies to enforce the minimum coverage requirements in their dealings with subcontractors clearly relate directly to the benefit described in the statement of purpose in Part 1 of the OCIP addendum, for which Pitts, as a "participant," would be an intended beneficiary.

(d) *Breach.*

The Supreme Court indicated that, on remand, we should consider whether the promisors breached their promises. *Pitts II*, 292 Ga. at 230 n. 18 (4). The construction companies in this case each signed documents in which they promised to abide by the minimum coverage requirements set out in Part 5 of the OCIP addendum and to require their subcontractors to comply with those requirements, as well. The General Contractor's contract with the City prohibited it from starting work on the project or allowing any subcontractor or sub-subcontractor to commence work until the requirements were met. The defendant Subcontractor was bound by these terms, as well, by virtue of its contract with the General Contractor. A & G Trucking, a subcontractor of the defendant Subcontractor, breached its duty to secure the required

coverage. The General Contractor and defendant Subcontractor breached their duties to require their subcontractors to secure that coverage and violated the prohibition against starting work until that coverage had been secured. For the reasons set out in *Pitts I*, we find that these promises made by the construction companies were breached. See *Pitts I*, 312 Ga. App. at 607-608 (1) (b).

(e) *Workers' compensation.*

Regarding the applicability of the exclusive remedy provision of the Workers' Compensation Act, OCGA § 34-9-11 (a), the Supreme Court stated that, because "questions remain about whether, and to what extent, Pitts was an intended beneficiary of [the] contracts, we do not reach the exclusive remedy question." *Pitts II*, 292 Ga. at 781 (4) n. 17. Accordingly, the Supreme Court has not held that our analysis of this issue in *Pitts I* was incorrect. We again find that the Estate's breach of contract claims were not barred by OCGA § 34-9-11 (a), for the reasons set forth in *Pitts I*, 312 Ga. App. at 605-607 (1) (a) (ii).

*Judgment affirmed in part, reversed in part. Boggs and Branch, JJ., concur.*