**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2014**

# In the Court of Appeals of Georgia

A14A0368. MAPEI CORPORATION v. PROSSER.

McFADDEN, Judge.

MAPEI Corporation sued former employee Stephen Prosser for violation of a contractual non-compete covenant. Finding that the agreement containing that non-compete covenant had been superseded by a subsequent agreement which covered substantially the same subject matter, contained a superseding-agreement clause, but omitted the non-compete covenant, the trial court granted summary judgment to Prosser. MAPEI appeals, arguing that the trial court erred in finding that the agreement omitting the non-compete covenant superseded the agreement containing that covenant. Specifically MAPEI argues that the agreement containing the non-compete covenant was revived by Prosser's subsequent conduct: by his delivery to MAPEI's representative of the previously-executed agreement containing the non-

compete covenant or by his acceptance of compensation. Alternatively MAPEI invokes the doctrine of mutual mistake. And it argues that, even if most of the agreement containing the non-compete covenant is superceded, the non-compete covenant itself survives. We are not persuaded. We find this case to be controlled by the fundamental principle that a contract is formed upon the parties' assent to its terms. OCGA §§ 13-3-1, 13-3-2. We agree with the trial court that Prosser's execution of the agreement omitting the non-compete covenant created a contract entirely superseding the one containing that covenant, and we therefore affirm.

"We review a ruling on a motion for summary judgment de novo, viewing the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant." *American Control Systems v. Boyce*, 303 Ga. App. 664, 665 (694 SE2d 141) (2010) (citation omitted).

So viewed, the record shows that Prosser, a chemist, became an employee of MAPEI when MAPEI acquired his employer in 2009. On June 7, 2011, as a condition of employment, Prosser signed the agreement containing the non-compete covenant. On June 14, 2011, Prosser signed a similar agreement omitting that non-compete covenant. Prosser ended his employment with MAPEI on October 26, 2011, and began working as a chemist for another company, which led to MAPEI's filing this

2

action for breach of the agreement containing the non-compete covenant. The parties moved for summary judgment. The trial court granted Prosser's motion and denied MAPEI's, finding that the agreement omitting the non-compete covenant replaced the agreement containing the non-compete covenant in whole. MAPEI filed this appeal.

1. *The terms of the agreements.*

(a) *The June 7, 2011 agreement, containing the non-compete covenant.*

The second introductory paragraph of the agreement containing the non-compete covenant referred to the agreement as "this Employee Confidentiality Agreement." The agreement provided that for five years after his employment ended, Prosser would not disclose MAPEI's confidential information, which it defined and which Prosser acknowledged was a "valuable and unique asset[] of [MAPEI,] . . . essential to [its] success, and that . . . derive[s] economic value from not being known to those outside [MAPEI]." It included a non-solicitation covenant, which provided that for a year after his employment ended, Prosser would not solicit MAPEI customers and employees. It included a non-compete covenant, which provided that Prosser would not "own, manage, operate, join, control, be employed by or with, consult with or work with a Competing Business anywhere in the United States where doing so [would] require [him] to provide a Competing Business with the same or

3

similar services [he] provided to [MAPEI] while [he] was employed by [MAPEI]." It defined "competing business" as any entity that was "directly engaged in whole or in relevant part in any business or enterprise that is the same as, or similar as, the [b]usiness of [MAPEI], which is defined as a manufacturer of adhesives, sealants, and other chemical products for the building industry."

The agreement required Prosser to acknowledge that all intellectual property he created while employed by MAPEI belonged to MAPEI and assigned his rights in such property to MAPEI.

It contained a superseding-agreement clause:

This Agreement, including the assignment [of rights to intellectual property] described in paragraph 7 above, shall continue after I am no longer employed by [MAPEI]. This Agreement totally replaces all prior contractual agreements or understandings between us, whether oral or written, about confidential information or any other subject matter contained herein.

(b) *The June 14, 2011 agreement, omitting the non-compete covenant.*

The agreement omitting the non-compete covenant shares many attributes of the agreement containing the non-compete covenant. In fact, large parts of it are identical. Like the preceding agreement, its second introductory paragraph referred

4

to the agreement as "this Employee Confidentiality Agreement." It provided that Prosser would not disclose MAPEI's information, which it defined and which Prosser acknowledged in language almost identical to that of the preceding agreement, which contains the non-compete covenant, was a "valuable and unique asset of [MAPEI,] . . . essential to [its] success and that derives economic value from not being known to those outside [MAPEI]." In language identical to that of the preceding agreement, it required Prosser to acknowledge that all intellectual property he created while employed by MAPEI belonged to MAPEI and to assign his rights in such property to MAPEI, although the agreement omitting the non-compete covenant did not contain a provision appointing MAPEI as an attorney in fact for pursuing letters of patent as did the agreement containing the non-compete covenant. And it contained a subsequent-agreement clause identical to that of the agreement containing the non-compete covenant. But unlike the preceding agreement, it did not include non-solicitation and non-compete covenants. And while the preceding agreement specified it was governed by Georgia law, the agreement omitting the non-compete covenant specified that it was governed by Florida law.

2. *The agreement containing the non-compete covenant was not revived.*

5

MAPEI argues that the trial court erred in ruling that the later-signed agreement nullified the agreement containing the non-compete covenant, and that, therefore, there was no binding non-compete clause at the time Prosser left MAPEI's employment. It argues that Prosser revived the agreement containing the non-compete covenant by ratifying it after he had signed the agreement omitting the non-compete covenant.

As detailed above, both agreements contained identical superseding-agreement clauses providing that the agreement "totally replaces all prior contractual agreements or understandings between us, whether oral or written, about confidential information or any other subject matter contained herein." And since both agreements concerned confidential information, whichever agreement became effective later replaced the prior agreement.

(a) *Delivery.*

MAPEI argues that the agreement containing the non-compete covenant became effective later, even though Prosser signed it first, because Prosser revived it when he physically handed it over to his boss in July 2011, without mentioning that he had signed the agreement omitting that covenant. The law of contracts is to the contrary. A contract that is intended to be signed by both parties, and so appears on

6

its face, is complete when thus signed. *Clarke Bros. v. McNatt*, 132 Ga. 610, 614 (64 SE 795) (1909). Once both parties have assented to its terms, a contract is binding. OCGA § 13-3-2. Prosser's acceptance of each contract, as evidenced by his dated signature, not the date he delivered the contract to MAPEI, is the effective date of each contract. See OCGA § 13-3-3. Indeed, in its statement of undisputed material facts, MAPEI asserts that Prosser signed and entered the agreement containing the non-compete covenant on June 7, 2011, and signed the agreement omitting that covenant on June 14, 2011. MAPEI has cited no authority for the proposition that Prosser's handing the agreement containing the non-compete covenant to his boss in July, without mentioning the agreement omitting the non-compete covenant, amounts to a ratification and revival of the agreement containing the non-compete covenant. Cf. OCGA § 44-5-30 ("[A] deed to lands. . . shall be delivered to the purchaser or his or her representative. . . .")

(b) *Acceptance of compensation.*

MAPEI argues that an employee who accepts compensation under a later contract, which provides that it "supersedes any previous agreement," ratifies terms of the later contract. But this proposition just as easily applies to the fact that Prosser

accepted compensation under the contract omitting the non-compete covenant, as to the fact that he accepted compensation under the contract containing that covenant.

3. *The evidence does not show a mutual mistake entitling MAPEI to reformation.*

MAPEI argues that the trial court should have reformed the contract on the basis of a mutual mistake of fact: that the parties intended an agreement containing a non-compete covenant. To justify reformation of a contract on the ground of mutual mistake, the evidence of the mistake must be "clear, unequivocal, and decisive." *Prince v. Friedman*, 202 Ga. 136, 138 (1) (42 SE2d 434) (1947). In support of its argument that the mistake was mutual, not simply its unilateral mistake in sending Prosser the agreement omitting the non-compete covenant, MAPEI points to the fact that Prosser received the agreement omitting the non-compete covenant but waited eight days to sign it, after he had already received and signed the agreement containing the non-compete covenant. Additionally, argues MAPEI, the heading on the agreement containing the non-compete covenant lists the state of Georgia, it states that Prosser's job is exclusively or principally located in Georgia, and it provides that it is governed by Georgia law, while the heading on the agreement omitting the non-compete covenant lists the state of Florida, it does not specify the location of

8

Prosser's job, and it provides that it is governed by Florida law. These facts, MAPEI contends, prove that Prosser, who lives and works in Georgia, knew the agreement omitting the non-compete covenant was not intended for him. We do not agree that these facts are "clear, unequivocal, and decisive" evidence that Prosser mistakenly entered the agreement omitting the non-compete covenant. The evidence regarding Prosser's delay in signing the agreement omitting the non-compete covenant is simply speculative; it even can be construed to show Prosser's intent rather than a mistake: he had the two contracts in hand, yet signed the one most favorable to him. Any mistake, therefore, would be unilateral. And the evidence regarding the designation of Florida law as controlling is not clear evidence of a mistake, given that MAPEI is a Florida-based company that sent Prosser the agreement omitting the non-compete covenant from Florida.

4. *The agreement omitting the non-compete covenant replaced the preceding agreement in its entirety.*

MAPEI argues that even if Prosser did not ratify the agreement containing the non-compete covenant, the agreement omitting the non-compete covenant only replaced the confidentiality provisions of the agreement containing the non-compete covenant, leaving intact the non-compete and non-solicitation covenants. This

9

argument is defeated by the language of the superseding-agreement clause itself, which is identical in both agreements. That clause provides that "This Agreement totally replaces all prior contractual agreements or understandings between us, whether oral or written, about confidential information or any other subject matter contained herein." As we have recently reiterated,

> contract construction proceeds in a series of steps, moving from one to the next only if necessary. The construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. Because the first two of these steps involve questions of law, the trial court's application of them is reviewed de novo on appeal.

*Estate of Pitts v. City of Atlanta*, 323 Ga. App. 70, 74 (4) (746 SE2d 698) (2013) (citation and punctuation omitted). We conclude that the language of the superseding-agreement clause is clear and unambiguous: the later-entered agreement replaces in their entirety all earlier-entered agreements that concerned a similar subject matter.

Here, as discussed above, the two agreements concerned similar subject matters. Therefore, the later-entered agreement omitting the non-compete covenant replaced the earlier-entered agreement containing the non-compete covenant in its entirety. Given this holding, it is not necessary for us to reach MAPEI's enumerations that the trial court erred in failing to find that Prosser breached the agreement containing the non-compete covenant and that the trial court erred in denying MAPEI's motion for summary judgment.

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*